FRANCIS SHERWOOD MALE, as Trustee for GILBERT W. CHAPIN, Appellant, *v.* THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Respondent, Impleaded with ATLANTIC AND PACIFIC RAILROAD COMPANY, Defendant.

First Department, July 13, 1917.

Corporations — railroads — action to enforce payment of bonds — rights of purchaser at judicial sale in absence of fraud — guaranty — subrogation — effect of payment by guarantor — laches.

In an action against the Atlantic Railroad Company and the old Atchison Railroad Company to recover the principal of income bonds issued by the first company with interest thereon it appeared from the complaint that the Atlantic Company owned a franchise to build a road from its initial terminus through Albuquerque, N. M., to the Pacific coast but was without funds; that the old Atchison and Frisco Companies owned more than seven-eighths of the capital stock of the Atlantic Company; that the old Atchison being desirous of extending its road from Albuquerque west to the Pacific coast but being unable to do so under its charter, it was proposed that the old Atchison and the Frisco Companies should sell the securities of the Atlantic Company to enable it to build its road westward. This was done pursuant to an agreement between the three companies under which the Atlantic Company issued three series of bonds; first mortgage; second mortgage and income bonds. The old Atchison and Frisco Companies guaranteed the payment of the first mortgage bonds and paid the interest thereon receiving for their advances second mortgage bonds of the Atlantic Company. Subsequently actions were brought to foreclose certain mortgage liens upon the property of the old Atchison

and Frisco Companies and later an action was brought by the trustees of the second mortgage on the Atlantic Company's property and the same receivers were appointed in each action. The stock of the Atlantic Company having become worthless, the new Atchison Company, a reorganization of the old Atchison Company, went through the form of selling and transferring all such stock owned by it, and on the same day purchased and received from the owners thereof the entire issue of the first mortgage bonds of the Atlantic Company, and it was agreed that thereby the new Atchison Company should be released from all obligations under the old Atchison Company's guaranty of the payment of the same. The new Atchison Company then proceeded to enforce decrees of foreclosure and sale against the property of the Atlantic Company from the income of which the income bonds were to be paid and subsequently purchased said property.

There was no diversion of assets of the Atlantic Company, no collusive foreclosure, and no violation of any duty that the old or new Atchison Company owed to the stockholders or creditors of the Atlantic Company. The sole charge is that the road was constructed for the use and benefit of the Atchison Company.

*Held,* that as the agreement between the companies was made prior to the issuance of the income bonds and said bonds were issued in furtherance of the agreement the plaintiffs as holders thereof are not in a position to attack the agreement under which they were issued, in an action to enforce payment on the bonds.

This case comes within the rule that in the absence of fraud the purchaser on a judicial sale in a foreclosure action obtains title free from all claims of subsequent lienors who were parties to the action and of all unsecured creditors of the owner.

The plaintiff not being a stockholder or creditor of the old Atchison Company has *no interest in the process of its reorganization.*

A guarantor has the right in protection of his own interest to pay the obligation and thereby become subrogated to the rights of the original holder to enforce the security which he held.

Payment by a guarantor does not discharge the debt as between the debtor and the guarantor.

Plaintiffs in this case are chargeable with gross laches that is not excused by any statement of fact in the complaint, which should be dismissed.

DOWLING, J., dissented, with opinion.

APPEAL by the plaintiff, Francis Sherwood Male, as trustee, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of March, 1916, granting respondent's motion for judgment on the pleadings, consisting of an amended complaint and demurrer thereto, and dismissing the amended complaint, and also from the judgment entered

in said clerk's office on the 16th day of March, 1916, dismissing the amended complaint pursuant to said order.

*William G. Cooke* [*Howard O. Wood* with him on the brief], for the appellant.

*Walker D. Hines* [*A. S. H. Bristow* with him on the brief], for the respondent.

PAGE, J.:

The complaint is quite fully set forth in the opinion of Mr. Justice DOWLING; therefore, only incidental reference need be made to it herein. For convenience and brevity, the various railroad corporations will in this opinion be designated, as in the complaint, the Atchison, Topeka and Santa Fe Railroad Company, as the old Atchison; the Atchison, Topeka and Santa Fe Railway Company, as the new Atchison; the Atlantic and Pacific Railroad Company, as the Atlantic Company; and the St. Louis and San Francisco Company, as the Frisco Company.

The plaintiff's theories of his rights to recover are: I. That the old Atchison Company had made itself liable in equity for the principal and interest of the income bonds, and upon reorganization the new Atchison Company succeeded to and was charged with that liability, for the reasons set forth in *Northern Pacific Railway* v. *Boyd* (228 U. S. 482). II. That if the income bonds be regarded as an obligation of the Atlantic Company solely, and for which the old Atchison Company was not charged with liability, the new Atchison is liable; for the reason that the new Atchison reorganization involved and included, in purpose and effect, the acquisition by the new Atchison of the property of both the old Atchison and the Atlantic, so that the new Atchison became liable for the debts of both, under the authority of *Kansas City Railway* v. *Guardian Trust Co.* (240 U. S. 166). III. That the sale under foreclosure of the Atlantic Company's property was void as against the holders of the income bonds, and that the new Atchison Company holds the property so sold subject to the claims of the plaintiff.

I. There was no contractual liability of the old Atchison Company to the holders of the income bonds of the Atlantic

Company.  They are the obligations of the Atlantic Company, payable out of the net earnings of the western division of the Atlantic Company.  Neither the principal nor interest was guaranteed by the old Atchison Company.  The appellant seeks to predicate liability upon the fact that a large percentage of the stock of the Atlantic Company was held by the old Atchison which, with the stock of the Atlantic Company held by the Frisco Company, gave a majority holding in these two companies.  A majority of the stock of the Frisco Company was also held by the old Atchison Company.  As the three companies had a harmonious management, and the western division of the Atlantic and the line of the Frisco were operated by the old Atchison Company, the appellant argues that the old Atchison Company held the property in trust for its creditors and that an equitable lien in favor of the holders of the income bonds became impressed on the property.

Conceding that the old Atchison Company, through its controlling interest in the Frisco Company, was able to elect the directors and officers of the Atlantic Company, the obligation that rested on the old Atchison Company was that of a majority stockholder and occupies to the minority stockholders the same trust relation that the corporation itself bears to its stockholders.  It cannot " divert the income of its business, refuse business which would enable the defaulting company to pay its interest, and then institute an action in equity to enforce its obligations, for the avowed purpose of obtaining entire control of its property to the injury of the minority stockholders.  Such a course of action is clearly opposed to the true interests of the corporation itself, plainly discloses that one thus acting was not influenced by any honest desire to secure such interests, but that its action was to serve an outside purpose, regardless of consequences to the debtor company, and in a manner inconsistent with its interest and the interest of its minority stockholders." (*Farmers' Loan & Trust Co.* v. *New York & Northern R. Co.*, 150 N. Y. 410, 431, and cases cited.)  To an extent, the same obligation of good faith and fair dealing are requisite in relation to the creditors of the corporation, and the corporation may not enter into a combination, the object of which is to financially embarrass the

debtor corporation and thus bring about a foreclosure of a mortgage and by a combination, the object of which is to divest the corporation of its property and seek it for itself at the expense of the corporation, its stockholders or its creditors. (*Jackson* v. *Ludeling*, 21 Wall. 616.) When it appears that the controlling corporation has devised a scheme with this object in view, a court of equity will look beyond the forms of the transactions which have been used to cloak the design and will afford relief to those whom the purpose was to defraud. A striking illustration of such action will be found in *Northern Pacific Railway* v. *Boyd* (*supra*). Boyd's claim was primarily against the Cœur D'Alene Railroad and Navigation Company, the capital stock of which was nearly all owned by the Northern Pacific Railway Company. The latter company fraudulently diverted $465,000 of the assets of the former company, and the court held that the Northern Pacific Railroad Company remained liable for that sum until it was restored to the true owner, and that this diversion rendered the said company liable in equity for the payment of Boyd's judgment. Thereafter, a suit was brought to foreclose a mortgage upon the property of the Northern Pacific Railroad Company and a decree of foreclosure and sale was entered upon the consent of the railroad company, and the property bought by a reorganization committee of the railroad. Stock in the new corporation, Northern Pacific Railway Company, was exchanged for stock in the Northern Pacific Railroad Company. The court said (p. 506): "As between the parties and the public generally, the sale was valid. As against creditors, it was a mere form. Though the Northern Pacific Railroad was divested of the legal title, the old stockholders were still owners of the same railroad, encumbered by the same debts. The circumlocution did not better their title against Boyd as a non-assenting creditor. They had changed the name but not the relation. The property in the hands of the former owners, under a new charter, was as much subject to any existing liability as that of a defendant who buys his own property at a tax sale." And the court held that, in equity, Boyd could recover his judgment from the new corporation. It thus appears that the liability of the company to Boyd grew out of the

fraudulent diversion of the assets of the Cœur D'Alene Company.

In the instant case there is not a single allegation of fact tending to show any fraudulent dealing with the assets of the Atlantic Company. Briefly summarized, it appears: That the Atlantic Company owned a franchise to build a road from its initial terminus through Albuquerque, N. M., to the Pacific coast; that it was without funds; the old Atchison's road extended to Albuquerque, and it was proposed that the old Atchison and the Frisco should sell the securities of the Atlantic Company to enable it to build its line from Albuquerque westward. This was done pursuant to an agreement between the three companies, the terms of which are not set forth, nor is it. material to this consideration. The old Atchison and the Frisco guaranteed the payment of the first mortgage bonds, principal and interest, and paid the interest thereon, receiving for their advances second.mortgage bonds of the Atlantic Company.

There is no claim that the agreement between the companies was not kept in good faith, nor is there any allegation charging that the old Atchison diverted any of the income or business from the Atlantic Company or diverted any of its assets. The sole charge is that the road was constructed for the use and benefit of the Atchison Company; but as the agreement was made prior to the issuance of the income bonds, and these bonds were issued in furtherance of that agreement, these plaintiffs as holders of said bonds are not in position to attack the agreement under which they were issued in an action brought to enforce payment of the bonds.

In 1893 actions were brought to foreclose certain mortgage liens upon the property of the old Atchison and the Frisco Company respectively, and the same receivers were appointed by the different courts for both companies. In 1894 an action was brought by the trustee of the second mortgage on the Atlantic Company's western division, and the same receivers were appointed; the declared purpose being to maintain a harmony of operation to secure the best results for all interested in the property. Until these various properties passed into the hands of receivers, the interest on the first mortgage appears to have been paid. It is not claimed by

the plaintiff that these foreclosures were collusively brought
or not justified by the then condition of the roads and the
financial stress of the times.  Pending the suit to foreclose
the mortgage on the old Atchison, a plan of reorganization
was entered into by nearly all the owners of stock and bonds
in that company, and a reorganization committee appointed,
a sale of the property of the company was had, and the
property bought by the reorganization committee on the 10th
day of December, 1895.  In September, 1895, the trustee
of the first mortgage of the Atlantic Company brought suits
to foreclose that mortgage, which resulted in decrees of fore-
closure on April 10, 1896, June 1, 1896, and December 22,
1896.  It is alleged in the complaint that all the first mort-
gage bonds were held by persons whose interests were other
than the old Atchison Company, and that the suits were
brought and prosecuted contrary to the wishes and efforts
of the old Atchison Company, and " that the new Atchison
Company resisted said foreclosure decrees by every lawful
means in its power."  The stock of the Atlantic Company
had now become worthless, but it is alleged that on January
28, 1897, the new Atchison Company went through the form
of selling and transferring all such stock owned by it, and on
the same day purchased and received from the owners thereof,
the entire issue of the first mortgage bonds of the Atlantic
Company, and it was agreed that thereby the new Atchison
Company should be released from all obligation under the
old Atchison Company's guaranty of the payment of the
same.  The new Atchison Company thereupon proceeded to
enforce the decrees of foreclosure and sale, and on the 3d
day of May, 1897, the western division of the Atlantic Com-
pany with all its property and appurtenances was sold under
such decree and was purchased by the members of the reor-
ganization committee, who transferred it to a corporation all
of whose stock was held by the new Atchison Company.
This corporation shortly thereafter conveyed the same to the
new Atchison Company.  There is no similarity in these facts
to the transaction reviewed in the *Boyd Case* (*supra*).  In
the instant case there was no diversion of assets of the
Atlantic Company, no collusive foreclosure, and no violation
of any duty that the old or new Atchison Company owed

to the stockholders or creditors of the Atlantic Company. The property of the Atlantic Company was sold pursuant to a decree, the obtaining of which was not consented to nor a part of any plan or design of the Atchison Company to obtain the property of the Atlantic Company, but was resisted by the new Atchison Company by every lawful means in its power. The instant case comes within the general and well-settled rule, that in the absence of fraud the purchaser on a judicial sale in a foreclosure action obtains title free from all claims of subsequent lienors who were parties to the action and of all unsecured creditors of the owner. This rule is recognized by the court in the *Boyd* case (p. 502), but it is demonstrated that that case is an exception to the rule. The reasons for the rule and the exception are admirably stated by Judge GARDINER in *Candee* v. *Lord* (2 N. Y. 269, 274). It is not necessary to consider the Atchison reorganization.

II. The plaintiff not being either a stockholder or creditor of the old Atchison, has no interest in the process of its reorganization. As we have stated hereinbefore, there was no scheme or plan for obtaining the property of the Atlantic Company, pursuant to which the Atchison Company procured the Atlantic Company nor did the stockholders of the Atlantic Company participate in the reorganization. The new Atchison received nothing, either directly or by way of allowance for its stockholdings in the Atlantic. That interest was extinguished by the foreclosure. In buying the first mortgage bonds, it did not act as a stockholder or in protection of its stock interest but solely in recognition of the liability of the old Atchison to pay the bonds by reason of its guaranty, which would have subjected the new Atchison to a claim for any deficiency that might arise. One so situated has the right, in protection of his own interest, to pay the obligation and thereby becomes subrogated to the rights of the original holder to enforce the security which he held. *Kansas City Railway* v. *Guardian Trust Co.* (*supra*) has no application to the instant case. Even if the Atchison Company was a stockholder of the Atlantic at the time it purchased the first mortgage bonds, it nevertheless had an absolute right to protect itself from loss under its guaranty and to enforce the security in its own behalf and to acquire the property by the

usual and lawfully settled procedure, and if there was no fraud, there being no trust relation, the new Atchison Company holds the property of the Atlantic Company free from all claim of its creditors.

III. The plaintiff finally contends that the judgment of foreclosure and sale was void, because the purchase of the bonds by the Atchison Company was a payment of the debt, and thereby the mortgage was satisfied and the subsequent sale was void and of no effect. It is sufficient answer to this contention to call attention to the fact that the debt was of the Atchison Company, payment of which was guaranteed by the old Atchison Company. Payment by a guarantor does not discharge the debt as between the debtor and the guarantor. The latter becomes subrogated to the rights of the original creditor.

The plaintiff is chargeable with gross laches that is not excused by any statement of fact in the complaint.

The judgment should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concurred; DOWLING, J., dissented.

DOWLING, J. (dissenting):

This action was brought to recover the sum of $120,000, being the amount of principal of income bonds of the Atlantic and Pacific railroad, issued October 1, 1880, and falling due October 1, 1910, with the interest thereon. Recovery is sought against the defendant Atlantic and Pacific Railroad Company as the maker of the bond and against the defendant the Atchison, Topeka and Santa Fe Railroad Company, as liable for the amount thereof upon the facts set forth in the complaint.

The complaint sets forth in brief that the Atlantic and Pacific Railroad Company, hereinafter referred to as the Atlantic Company, was organized under an act of Congress in 1866 and was authorized to construct a railroad from at or near the town of Springfield in the State of Missouri to the town of Albuquerque in the Territory of New Mexico and thence by designated routes to the Pacific coast. (See 14 U. S. Stat. at Large, 292, chap. 278.) No part of such railroad except a few miles in the State of Missouri was ever actually constructed by the Atlantic Com-

pany; but a certain other corporation, the Atchison, Topeka and Santa Fe Railroad Company, hereinafter called the old Atchison Company, owned and operated lines of railroad through the States of Kansas and Colorado and the Territory of New Mexico, and was about to complete its road to Albuquerque. A certain other corporation, St. Louis and San Francisco Railway Company, hereinafter called the Frisco Company, owned and operated a line of railroad in the State of Missouri and Indian Territory with a branch running westward and intended to be continued to a place called Wichita upon the old Atchison Company's line for the purpose of forming a junction and connection therewith. On January 31, 1880, the old Atchison and Frisco Companies owned more than seven-eighths of the capital stock of the Atlantic Company, that is, of the 197,603 shares of that company then outstanding the old Atchison owned 97,795½ and the Frisco Company about 70,000. The old Atchison was desirous of extending this railroad from Albuquerque west to the Pacific coast, but was unable to do so under its own charter. The Atlantic Company had authority to build a railroad along the only line available for the extension of the old Atchison, and was the owner of an enormous area of land between the terminus of the old Atchison road at Albuquerque and the Pacific coast. The Atlantic Company was insolvent and had no railroad either completed or in course of construction, nor any property except lands in the Territories of New Mexico and Arizona which were of no value without a railroad through them. On January 31, 1880, the old Atchison Company entered into an agreement with the Frisco Company and the Atlantic Company, reciting that the parties were desirous of building a through line of railway to the Pacific coast, and the Atlantic Company had caused surveys to be made of its projected line of railway to the coast; that, therefore, it was agreed for the purpose of building and securing the through line aforesaid to construct and operate under the charter, franchises and grant of the Atlantic Company, a line of railroad and telegraph from Albuquerque by the most practicable route under its charter to the Pacific coast, such line being referred to in the agreement as the western division of the Atlantic and Pacific railroad. It was agreed

that said division should be constructed from Albuquerque to a place called The Needles in the State of California. It is alleged that the sole purpose of such construction was to furnish the old Atchison Company with an outlet to the Pacific coast and for the exclusive use and benefit of the old Atchison Company. By the terms of the agreement the western division was to be so constructed as to connect with the old Atchison road at Albuquerque and was to be operated as a through line for the old Atchison for thirty years from April 5, 1880, during which period all business from said western division should pass over the railroad of the old Atchison eastward from Albuquerque. The Frisco road did not extend to Albuquerque nor reach any point upon the Atlantic Company's western division, but the nearest approach thereto existing or in contemplation was Wichita where it was intended to connect with the old Atchison road 744 miles from Albuquerque. The western division of the Atlantic Company for its whole extent of 581 miles was to run through a barren wilderness which was and still is almost devoid of population, so that the railroad there constructed would be, was and still is useless and of no value whatever except as furnishing to said old Atchison Company and its successor an outlet to the Pacific coast. It is then alleged that the western division was thereupon constructed under the charter, franchises and grant of the Atlantic Company, but in truth and in fact it was so constructed and afterwards equipped and operated under the control and for the exclusive use and benefit of the said old Atchison Company as a part of its railroad, and all the contracts, debts and obligations made and incurred in the name of the Atlantic Company were so made and incurred in behalf and for the sole benefit, use and purposes of the old Atchison Company. By the agreement it was provided that the Atlantic Company should issue three series of bonds: *First,* first mortgage six per cent gold bonds to an extent not exceeding $25,000 a mile of contemplated road payable in thirty years from July 1, 1880; *second,* second mortgage six per cent bonds to an amount not exceeding $10,000 a mile of road payable in twenty-five years from September 1, 1882; both these issues being secured by

a mortgage upon all the property of the western division; *third,* income bonds to an amount not exceeding $18,750 a mile of contemplated road payable thirty years from October 1, 1880, to be secured by a mortgage upon the net earnings and income of the western division. It was further agreed that the old Atchison and Frisco Companies should each sell and dispose of one-half of the first mortgage and income bonds and the proceeds thereof should be used to construct, equip and maintain and operate the western division; that the second mortgage bonds should be used to realize such sum as might be necessary to complete the division after exhausting the first mortgage and income bonds, and also to secure the old Atchison and Frisco Companies the principal and interest of the contributions made by them to the payment of interest upon said first mortgage bonds. On July 1, 1880, the Atlantic Company issued its first mortgage bonds under the agreement to the amount of $16,000,000 to the old Atchison and Frisco Companies. On October 1, 1880, it issued its income bonds to the amount of $12,000,000 to the same companies. These bonds are alleged to have been sold one-half by each of these two companies and the proceeds used for the construction and equipment of the western division. On October 5, 1886, the Atlantic Company issued in exchange for the first mortgage bonds trust bonds to the same amount bearing interest at four per cent, the old Atchison and Frisco Companies each guaranteeing the payment of one-half the principal and interest thereof. The old first mortgage bonds were not canceled but were deposited in trust with the Mercantile Trust Company of New York as security for the new bonds. On September 1, 1887, the Atlantic Company pursuant to the agreement issued second mortgage bonds to the amount of $5,600,000, one-half thereof being delivered to the old Atchison Company and the other half to the Frisco Company in satisfaction of claims against the Atlantic Company for interest paid by the other two companies on the first mortgage bonds. From time to time during the years 1880 to 1893 the Atlantic Company issued additional shares of capital stock, many thousand shares of which were acquired by the old Atchison Company on account of moneys paid by it for the construction, equipment and

operation of the western division, as the result of which the
old Atchison and Frisco Companies together owned a very
large majority of the Atlantic Company's stock and dominated
and controlled the Atlantic Company and all its affairs.   In
1890 the old Atchison Company acquired all or nearly all
the capital stock, both common and preferred, of the Frisco
Company and thus became the real owner of at least seven-
eights of the capital stock of the Atlantic Company and
thenceforth managed and operated the railroads of the three
companies as one road with the same president, vice-president,
executive chairman and general counsel.   On October 15,
1889, the old Atchison Company executed and delivered to
the Union Trust Company of New York a deed of trust or
mortgage to secure $200,000,000 covering its line of railroad
and the stock and bonds of the Atlantic Company and the
other property and assets of the old Atchison.  ˊOn December
23, 1893, the Union Trust Company began a suit in the
Circuit Court of the United States for the District of Kansas,
against the old Atchison Company, in which suit receivers
of the old Atchison Company were appointed with the
acquiescence of that company and on the same day in a suit
against the Frisco Company in the Circuit Court of the
United States for the Eastern District of Missouri the same
persons were appointed receivers of the company.   Two of
those receivers were the president and general counsel of the
old Atchison Company.   Under the order appointing the
receivers they were required to operate all the railroads con-
trolled by the Atchison ˙Company including. the western
division of the Atlantic Company, it being alleged that the
unity of the property and its integrity as a whole constituted
one of the most important elements of its value.   In January,
1894, the receivers caused suits to be begun by the Mercantile
Trust Company of New York, trustee for bondholders, to
foreclose the second mortgage on the western division of the
Atlantic Company, all said mortgage amounting to $5,600,000
then being owned by the old Atchison Company.   Suits were
brought in New Mexico, Arizona and California, in each of
which the receivers procured their own appointment as receivers
of the Atlantic Company.   In March, 1893, the Union Trust
Company began suit in Kansas to foreclose the old Atchison

Company's $200,000,000 mortgage and the same persons were made receivers in that case. Nearly all the holders of bonds of the old Atchison Company and nearly all the owners of the capital stock thereof entered into an agreement for the reorganization of the company and a readjustment of its affairs, a committee of nine persons being appointed to carry out a plan of reorganization which was agreed to by nearly all the holders of the bonds and stock to the effect that the foreclosure suit of the Union Trust Company should be allowed to proceed to judgment and sale, upon which sale the property of the old Atchison Company should be bought in by the committee and conveyed to a new corporation to be organized by the committee, the stock of which should be distributed to the consenting stockholders of the old Atchison and new bonds were to be issued to the consenting bondholders. As the result of the agreement a new corporation was organized under the laws of the State of Kansas, the defendant the Atchison, Topeka and Santa Fe Railway Company, hereinafter called the new Atchison Company, which thereupon issued its stock and bonds to the former stockholders and bondholders of the old Atchison as provided by the agreement. This reorganization and distribution of the new stock was without the participation of, or notice to, any creditors of the old Atchison Company or the Atlantic Company, except the bondholders of the old Atchison Company, and no provision was made for or offered to them in connection with the plan or agreement or with anything done in carrying out the same. Judgment of foreclosure was entered in the Union Trust Company's suit and the old Atchison Company and all its property were sold at auction December 10, 1895, at Topeka, Kan., and bought in by the reorganization committee for $60,000,000, and forthwith conveyed to the new Atchison Company. By reason of the default of the Atlantic Company in the payment of interest on its guaranteed trust bonds and by reason of the old Atchison and Frisco Companies' not making good their guaranty thereof, the holders of such bonds caused a sale to be made of the first mortgage bonds of the Atlantic Company, which had been pledged with the Mercantile Trust Company as security, and such bonds were bought at the sale by persons whose

interests were other than those of the old Atchison Company. In September, 1895, the United States Trust Company, as trustee under the first mortgage, began suits in New Mexico, Arizona and California to foreclose the Atlantic Company's first mortgage. At this time the suit to foreclose the Atlantic Company's second mortgage (all the bonds secured by which were held by the old Atchison Company) was still pending and undetermined. The suits to foreclose the first mortgage were brought against the wishes and efforts of the old Atchison Company, but judgments of foreclosure were entered April 10, 1896, June 1, 1896, and December 22, 1896, decreeing the sale of the western division together with all its land grants, equipment, appurtenances and other property, which had been resisted by the new Atchison Company by every lawful means. The capital stock of the Atlantic Company had now become worthless, but on January 28, 1897, the new Atchison Company went through the form of selling to unknown persons all its holdings of Atlantic Company's capital stock and pretended it had disposed of the same and thereafter and on the same day the new Atchison Company purchased and received the entire issue of first mortgage bonds of the Atlantic Company's western division with all unpaid interest due thereon and paid therefor $530,000 in cash, $8,400,000 face value general mortgage bonds of the new Atchison Company and $9,200,000 of its preferred stock. By this purchase and payment it was agreed that the new Atchison Company should be and was released from all obligations under the old Atchison Company's guaranty. The market value of the bonds was then eighty per cent, and the preferred stock seventeen per cent, so that the total cost to the new Atchison Company in obtaining the first mortgage bonds was $8,914,000, besides the costs and expenses of the foreclosures. Having thus acquired or pretended to acquire the bonds and mortgage the new Atchison Company proceeded to enforce the judgments of foreclosure and sale, and on May 3, 1897, at Gallup, N. M., the western division, with all its property, was sold under the judgment and bought by the reorganization committee of the new Atchison for $12,000,000, whereof only $503,133 was actually paid, being the costs and expenses of the foreclosure. Thereupon title to the property so purchased was

transferred to the Santa Fe Pacific Railroad Company, which was a corporation organized for the sole purpose of taking such conveyance and holding the title temporarily for the new Atchison Company. All the capital stock of the Santa Fe Company was owned by the new Atchison Company and after title had been held in the name of the former for a short time the title to the western division and all its property was sold at foreclosure and was transferred to the new Atchison Company, which ever since has held and still holds possession of the same. It is then alleged that the western division with its property and appurtenances when sold under the judgment of foreclosure was worth about $100,000,000, and that its total indebtedness, all of which has been incurred under the management and for the exclusive benefit of the old Atchison Company amounted to about $56,000,000; that the income bonds constituted, after the first mortgage bonds, the first claim and first right to satisfaction out of the property belonging to the western division; that under the guaranty executed by the old Atchison Company the new Atchison Company was legally bound to pay the amount due upon said first mortgage bond; that payment to the holders thereof was but the fulfillment by the new Atchison Company of its own legal obligation and that thereupon and by such payment the first mortgage and guaranteed trust mortgage became and were satisfied and discharged; that the several suits to foreclose the first mortgage thereupon abated and the judgments entered therein were satisfied, and that the sale of the western division and its property was null and void, so that the purchaser at the sale acquired no title thereto, but the western division and its property and appurtenances were taken possession of by the Santa Fe Company and afterwards transferred to the new Atchison Company, subject to the right and claim of owners of the income bonds to the satisfaction and payment of the amount due upon said bonds, and has ever since remained and still remains so subject; that the pretended disposal of its stock in the Atlantic Company on January 28, 1897, the organization by it of the Santa Fe Company and the use thereof as nominal holder of the property bought at the alleged foreclosure and all the other acts and devices in connection with the first mortgage bonds and the

foreclosure thereof, were for the purpose and in furtherance of a design on the part of the new Atchison Company to appropriate to itself by the illegal, wrongful and dishonest use use of judicial process, the said western division, with all its property and appurtenances and to cut off the lawful creditors of the Atlantic Company and to deprive them of all means of recourse for the collection of the money owing them, to the property for the creation of which the money had been advanced, all for the direct and exclusive benefit and behoof of the old Atchison Company and its successor, the new Atchison Company. Plaintiff alleges that the earnings of the western division of the Atlantic Company's railroad had been in every year since October 1, 1897, sufficient for the payment of interest upon said bonds as it fell due. The principal of all of the said bonds became due October 1, 1910, but no part thereof has been paid and the Atlantic Company since August, 1893, has had no money wherewith to pay the bonds or interest thereon, nor any property to which recourse can be had for the satisfaction of any judgment, but the company is practically out of existence and all its property of every description is now held by and claimed to be vested in the new Atchison Company. Plaintiff then alleges his ownership of the bonds in suit and avers that neither he nor any other owner thereof had notice of any suits, decrees, sales, negotiations, conveyances or proceedings complained of, nor was any opportunity offered to him or them to participate in the reorganizations set forth, nor were they ever offered anything for their interest as creditors and bondholders.

I am of the opinion that the complaint based upon the facts thus summarized sets forth a good cause of action upon two theories: *First,* that before reorganization the old Atchison Company had made itself liable in equity for the principal and interest of the income bonds and, upon reorganization, the new Atchison Company succeeded to that liability. The liability of the old Atchison Company is predicated upon the proposition that the agreement between the three roads (as one of the results of which the income bonds in suit were issued) was for the exclusive benefit of the old Atchison Company, prejudicial to the interests of the Atlantic Company, and in fraud of the purchasers of the

bonds. From the facts alleged in the complaints, it appears that the old Atchison Company, owning or controlling seven-eighths of the capital stock of the Atlantic Company, so dealt with the interests of the latter company that the interests of the latter were subordinated to those of the former, and that the old Atchison Company, in complete domination of the Atlantic Company, so handled the property of the latter as to inure to its own benefit and to the prejudice of the Atlantic Company, its security holders and its creditors. The effect of the agreement was to give the old Atchison an extension from Albuquerque to the Pacific coast which it was unable to do under its own charter; prevent competition with the old Atchison by the Atlantic Company from Albuquerque eastward, which would be the case if the Atlantic Company built under its charter; absolutely throw into the hands of the old Atchison all business over the western division of the Atlantic Company eastward from Albuquerque for a period of thirty years, and make the western division nothing but a strip through the desert, valueless to the Atlantic Company but of the greatest value to the old Atchison Company. Thus the old Atchison Company not merely insured the construction of its connection westward from Albuquerque under the charter and in the name of the Atlantic Company, but at the same time prevented the Atlantic Company for a period of thirty years from constructing or operating any road to the east of Albuquerque and making its own railroad lines of substantial value, or putting them in a position to be an independent factor in transportation. This agreement, therefore, resolves itself into a contract made by the old Atchison Company with a corporation which it dominated and the rights of whose future creditors to be created under the agreement it ignored, by which it operated this western division as its own, burdening it with enormous debts, failing to pay even the interest upon its obligations and finally acquiring all the property of the Atlantic Company for $500,000, the property thus obtained being alleged to be worth $100,000,000, and in effect seeking to destroy and render worthless all unsecured debts which had been created while the road was being operated for the benefit of the old Atchison Company. If these facts can be established, they would seem

to bring the case within the doctrine laid down in *Northern Pacific Railway* v. *Boyd* (228 U. S. 482) and *Kansas City Railway* v. *Guardian Trust Co.* (240 id. 166). As was held in the former case: " Contracts for reorganization made between bondholders and stockholders of corporations, insolvent or financially embarrassed, involving the transfer of the corporate property to a new corporation, while proper and binding as between the parties, cannot, even where made in good faith, defeat the claim of non-assenting creditors; nor is there any difference whether the reorganization be made by contract or at private sale or consummated by a master's deed under a consent decree." *Second,* but even if the old Atchison Company be not regarded as liable for the income bonds in question (which are to be treated solely as the obligation of the Atlantic Company), none the less were the unsecured creditors of the Atlantic Company entitled to participate in the reorganization and the new corporation, the new Atchison Company, is liable for the claims of such of those creditors as were ignored in that proceeding. This proposition would seem to be established by the cases of *Louisville Trust Co.* v. *Louisville, etc., Railway* (174 U. S. 674) and *Kansas City Railway* v. *Guardian Trust Co. (supra).* These cases laid down in the strongest terms the obligation and duty of stockholders of a corporation as trustees to apply its property to the payment of its debts before they take to themselves any share in or benefit therefrom.

I am of the opinion that the facts alleged in this complaint are such as to constitute a cause of action from both these points of view, and that the judgment and order appealed from should be reversed, with costs to appellant, but with leave to defendant to withdraw its demurrer and to answer on payment of such costs.

Judgment affirmed, with costs.