# KANSAS CITY SOUTHERN RAILWAY COMPANY v. GUARDIAN TRUST COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 85.  Argued December 13, 14, 15, 1915.—Decided February 21, 1916.

A reorganization scheme adopted upon the foreclosure of a mortgage of a railroad company and a purchase thereunder which provides substantially for the stockholders of the company, but which makes inadequate provision for its unsecured creditors, cannot be sustained; and in this case, *held*, that the purchaser was chargeable with such unsecured debts.  *Northern Pacific Ry.* v. *Boyd*, 228 U. S. 482.

One owning both stock and floating debt of a company whose property is under foreclosure and who assents to a scheme of reorganization which does not on its face show that it unduly provides for the stockholders and does not adequately provide for the unsecured creditors is not precluded from subsequently claiming that for such reason the property is still chargeable after the sale with his unsecured debt.

On the facts of this case, *held*, that the party attacking a reorganization scheme as not adequately protecting unsecured creditors while providing for stockholders was not barred by laches.

Even though reorganization schemes must be framed so as to induce parties interested to come in and furnish fresh money, and courts should avoid artificial scruples in considering such arrangements, substantial justice must be done and well settled rules of equity must not be transgressed.

210 Fed. Rep. 696, affirmed.

THE facts, which involve the validity of a scheme of reorganization adopted upon the foreclosure of a railroad company and a purchase of the same which provided for the stockholders but left its unsecured creditors inadequately provided for, are stated in the opinion.

*Mr. S. W. Moore* and *Mr. Samuel Untermyer* for appellants:

The plan of reorganization is binding upon the Trust Company because it actively participated in the plan and greatly benefited by it in the exchange of its own securities in the old companies for those of the Southern Company. Equity will not permit the Trust Company to retain the benefits of the plan and at the same time attack it as fraudulent. It cannot claim both under and against the plan.

The application of the doctrine of "quasi-estoppel" or of estoppel by the acceptance of benefits is fatal to any right of recovery on the part of the Trust Company. *Compton* v. *Jessup*, 167 U. S. 1; *Daniels* v. *Tearney*, 12 Otto, 415; *Farmers' Bank* v. *Groves*, 12 Howard, 51; *Gaddes* v. *Pawtucket Institution*, 80 Atl. Rep. 415; *Inter. Contracting Co.* v. *Lamont*, 155 U. S. 303; *Loy* v. *Alston*, 172 Fed. Rep. 90; *North Chicago R. R.* v. *Chicago Traction Co.*, 150 Fed. Rep. 612, 626; *Post* v. *Beacon Co.*, 84 Fed. Rep. 371; *Sage* v. *Finney*, 135 S. W. Rep. 996; *Seminole Securities Co.* v. *Southern Ins. Co.*, 182 Fed. Rep. 85; *State* v. *Bank*, 95 N. W. Rep. 1116; *Shackleton* v. *Baggaley*, 170 Fed. Rep. 57, 59; *Towers* v. *African Tug Co.*, L. R. 1 Ch. 1904, 558; *United States* v. *Hodson*, 10 Wall. 395; *United States* v. *Morse*, 218 U. S. 493; *Winslow* v. *Railroad*, 208 U. S. 59; *Wormser* v. *Metropolitan St. Ry.*, 76 N. E. Rep. 1036.

The doctrine of equitable election is a complete bar to a recovery by the Trust Company. *Codrington* v. *Lindsay*, 8 I. R. Ch. App. 578, 587; *Merchants' Bank* v. *Sexton*, 228 U. S. 634.

The doctrine of equitable estoppel is also a complete bar to a recovery by the Trust Company. *Bank* v. *Heckman*, 148 Indiana, 490; *Canton Co.* v. *Rolling Mill*, 155 Fed. Rep. 321; *Farmers' Trust Co.* v. *Railway Co.*, 120 Fed. Rep. 1006; *Fiske* v. *Carr*, 20 Maine, 301; *Gutzweiler* v. *Lackman*, 23 Missouri, 168; *Jacobs* v. *Lumber Co.*, 15 S. W. Rep. 236; *Jessup* v. *Hulse*, 21 N. Y. 168; *Kahn* v. *Peter*, 16 So. Rep. 524; *Matthews* v. *Murchison*, 15 Fed. Rep. 691; *Mitchell* v. *Mitchell*, 61 Atl. Rep. 570; *Olliver* v. *King*, 8 De G., M. & G. 110; *Perisho* v. *Perisho*, 71 Ill. App. 222; *Rapalee* v. *Stewart*, 27 N. Y. 310; *Reagan* v. *First National Bank*, 61 N. E. Rep. 575; *Richards* v. *White*, 7 Minnesota, 345; *Smith* v. *Espy*, 9 N. J. Eq. 160; *Symmes* v. *Union Trust Co.*, 60 Fed. Rep. 830; *Thompson* v. *Cohen*, 127 Missouri, 215; *Vose* v. *Cowdrey*, 49 N. Y. 336.

Under the rule of the *Boyd Case*, 228 U. S. 482, the Trust Company is not entitled to recover.

The Trust Company is barred from a recovery in this action by its covenant that it would not hold the new company for the debts of any of the old ones. *C., R. I. & P. Ry.* v. *Howard*, 7 Wall. 392; *L. N. A. & C. Ry.* v. *Louisville Trust Co.*, 174 U. S. 674; *Medill* v. *Snyder*, 58 Pac. Rep. 962; *Nor. Pac. Ry.* v. *Boyd*, 228 U. S. 482; *Stone* v. *Cook*, 179 Missouri, 534; *Young* v. *Young*, 27 Atl. Rep. 627.

The mortgage indebtedness of the Belt Company was $1,000,000. It was sold at foreclosure sale for $1,000,000, which the master found was the fair market value at that time. Under these circumstances, the Trust Company, as a creditor of the Belt Company, has not been injured and has no right to complain.

A resulting trust was created in favor of the Railway Companies paying for the properties deeded to the Central Company, and this equitable interest passed under the after-acquired property clauses of their mortgages. The

Central Company acquired the properties subject to this trust, and the interest of its stockholders was likewise subject thereto. The Trust Company acquired the stock of the Central Company with a knowledge of these facts, and its equities, therefore, are subordinate to those of the Southern Company. *Albright* v. *Oyster*, 140 U. S. 493; *Augusta Rd. Co.* v. *Kittel*, 52 Fed. Rep. 63; *Bear Lake Irrigation Co.* v. *Garland*, 164 U. S. 1, 15; *Central Trust Co.* v. *Kneeland*, 138 U. S. 414; *Condit* v. *Maxwell*, 142 Missouri, 266; *Ducie* v. *Ford*, 138 U. S. 587; *Farmers' Trust Co.* v. *Denver R. R.*, 126 Fed. Rep. 46; *Guaranty Trust Co.* v. *Atlantic &c. R. R.*, 138 Fed. Rep. 517; *Lauter* v. *Trust Co.*, 85 Fed. Rep. 894–903; *McGourkey* v. *Toledo R. Co.*, 146 U. S. 536; *New England Water Works* v. *Farmers' Loan & Trust Co.*, 136 Fed. Rep. 521; *Osborn* v. *Perkins*, 122 Fed. Rep. 127, 131; *Sanford* v. *Loan Society*, 80 Fed. Rep. 54; *Toledo, Delphos &c. R. R.* v. *Hamilton*, 134 U. S. 296; *Wade* v. *Chicago R. R.*, 149 U. S. 327; *Wade* v. *Sewell*, 56 Fed. Rep. 129; *Watson* v. *Bonfils*, 116 Fed. Rep. 157.

Even if it should be held that the Trust Company has a right of recovery, it should be limited to such equitable terms as in the opinion of the court should have been offered at the time of the reorganization.

There was no exception to the Master's report in the court below challenging the correctness of his finding that the Southern Company was not liable for the floating indebtedness of the Belt Company. The decision of the Court of Appeals that such finding can be reviewed in an appellate court in the absence of exceptions is in conflict with the decisions of the courts of appeal of other circuits and with the rulings of this court. *Brockett* v. *Brockett*, 3 How. 692; *Burns* v. *Rosenstein*, 135 U. S. 449; *New Orleans* v. *Fisher*, 91 Fed. Rep. 574; *Columbus R. R. Appeals*, 109 Fed. Rep. 117, 219; *Coghlan* v. *South Car. R. Co.*, 142 U. S. 101, 115; *McMicken* v. *Perrin*, 18 How.

504, 587; *Medsker* v. *Bonebrake*, 108 U. S. 66, 72; *Provident Trust Co.* v. *Camden Ry.*, 177 Fed. Rep. 854, 859; *Sanford* v. *Embry*, 151 Fed. Rep. 977, 982; *Sheffield Ry.* v. *Gordon*, 151 U. S. 285, 290; *Story* v. *Livingston*, 13 Pet. 359, 366; 17 Enc. Pl. & Prac. 1047; 2 Foster's Federal Practice, § 315; *Topliff* v. *Topliff*, 145 U. S. 156; 2 Street on Fed. Eq. Prac., §§ 1476, 1486.

The action of the Court of Appeals is final so that an application for certiorari at this time is not premature. *Beasley* v. *Tex. & Pac. Ry. Co.*, 191 U. S. 492; *Denver* v. *N. Y. Trust Co.*, 229 U. S. 132; *Harriman* v. *Nor. Securities Co.*, 197 U. S. 244; *Merrill* v. *National Bank*, 172 U. S. 131.

*Mr. Frederick W. Lehmann* and *Mr. George H. English, Jr*, with whom *Mr. Edward P. Gates* and *Mr. Walter C. Clephane* were on the brief, for appellee:

The property of the Belt Company was a trust fund to which the creditors were entitled in priority to the stockholders. *Central Imp. Co.* v. *Cambria Co.*, 201 Fed. Rep. 811; *Same* v. *Same*, 210 Fed. Rep. 696; *North. Pac. Ry.* v. *Boyd*, 228 U. S. 482.

The amount bid at the foreclosure sale of the Belt property was no evidence of its value. *Investment Registry* v. *C. & M. E. R. Co.*, 212 Fed. Rep. 504; *North Pac. Ry.* v. *Boyd*, 228 U. S. 482; § 8, Art. 12, Const. Missouri; § 962, Rev. Stat. Missouri, 1899; *Shickle* v. *Watts*, 94 Missouri, 410; *Moffit* v. *Hereford*, 132 Missouri, 513; *Louisville Trust Co.* v. *Louisville Ry.*, 174 U. S. 674.

The plan of reorganization provided for the payment of the debts of the old companies.

The estimate as to the floating debt was not intended as a limitation upon the amount to be paid under the plan.

The provision for the payment of debts made by the plan was not limited by the interests of the bondholders.

There was no exclusion of creditors who were also bond-holders and stockholders.

All the creditors save the Trust Company were paid and the Trust Company was paid in part.

The Trust Company was entitled to enforce the provisions of the plan as a contract made for its benefit. *Second National Bank* v. *Grand Lodge*, 98 U. S. 123; *Johns* v. *Wilson*, 180 U. S. 440; § 1729, Rev. Stat. Missouri, 1909; *Meyer* v. *Lowell*, 44 Missouri, 328; *Beattie Mfg. Co.* v. *Clark*, 208 Ibid. 89.

There was no covenant by the Trust Company that it would not hold the new company for any of the debts of the old. *Webster* v. *Ins. Co.*, 53 Oh. St. 558; *Hobbs* v. *McLean*, 117 U. S. 567; *United States* v. *Cent. Pac. Ry.*, 118 U. S. 235; *Noonan* v. *Bradley*, 9 Wall. 394.

The Trust Company was not barred as a creditor by participating in the plan as bondholder and stockholder.

The Southern Company was liable as being a consolidation of the old companies. See § 1059, Rev. Stat. of Missouri, 1899; *Leavenworth County* v. *Railroad*, 134 U. S. 688; *State ex rel.* v. *Lesueur*, 145 Missouri, 594; *Wells* v. *Electric Co.*, 108 Mo. App. 607; *Barrie* v. *United Railways*, 138 Mo. App. 557; *Johnson* v. *United Railways*, 247 Missouri, 326; *C. S. F. & C. Ry.* v. *Ashling*, 160 Illinois, 373; *Shadford* v. *Detroit Ry.*, 130 Michigan, 300.

The "Equitable Terms of Recovery" now suggested by the Southern Company are very inequitable.

The lands of the Central Improvement Company did not pass under the after acquired property clause of the Belt mortgage. *Humphreys* v. *McKissock*, 140 U. S. 304; *Pardee* v. *Aldridge*, 189 U. S. 429; *Smith* v. *McCullough*, 104 U. S. 25; *Railroad* v. *Coffin*, 50 Connecticut, 150; *Densmore* v. *Railroad*, 12 Wisconsin, 649.

Even though the exception to the Master's report did not formally and directly challenge the correctness of his finding, which was one of law, that the Southern Company

was not liable for indebtedness of the Belt Company, none the less in the circumstances of the case it was competent and proper for the court to consider and determine the question upon its merits. *Guardian Trust Co.* v. *Kansas City Southern Ry.*, 201 Fed. Rep. 811; *Central Imp. Co.* v. *Cambria Co.*, 210 Fed. Rep. 696; *Sheffield Ry.* v. *Gordon,* 151 U. S. 285; 17 Enc. Pl. and Prac. 1048; 2 Daniel Chanc. Pl. and Prac. 1314; *Himley* v. *Rose*, 5 Cranch, 313; *Burke* v. *Davis*, 81 Fed. Rep. 907; *Celluloid Mfg. Co.* v. *Cellulite Mfg. Co.*, 40 Fed. Rep. 476; *Gordon* v. *Lewis*, 2 Sumner, 143; *Brooks* v. *Robinson*, 54 Mississippi, 272; *Haymond* v. *Murphy*, 65 W. Va. 616; *Webster* v. *Cadwallader*, 133 Kentucky, 500; *Lehman* v. *Powe*, 95 Mississippi, 446; *Von Phalen* v. *Winterbotham*, 203 Illinois, 202.

There is no reason of law, policy or morals for preferring stockholders to general creditors in the reorganization of railroad properties.

*Mr. Harry S. Mecartney*, with whom *Mr. Newell H. Clapp* was on the brief for intervening stockholders.

Mr. Justice Holmes delivered the opinion of the court.

This is an appeal from a decree in which the Circuit Court of Appeals decided that the Guardian Trust Company as an unsecured creditor of the Kansas City Suburban Belt Railroad Company was entitled to charge the appellant for the Belt Company's debt, because the reorganization scheme, adopted upon a foreclosure of a mortgage of the Belt Company's property and a purchase by the appellant, left the unsecured creditors inadequately provided for while it made a considerable provision for the stockholders in the Belt Road. *Guardian Trust* v. *Cambria Steel*, 201 Fed. Rep. 811; 120 C. C. A. 121. 210 Fed. Rep. 696; 127 C. C. A. 184. See *Nor. Pac. Ry.* v. *Boyd*, 228 U. S. 482.

The facts are less complicated than the proceedings that

have grown out of them.  The Kansas City, Pittsburg and Gulf Railroad extended from Kansas City to Port Arthur on the Gulf of Mexico.  It used terminals at Kansas City belonging to the Belt Company above mentioned, and companies in its control, and at Port Arthur belonging to a Dock Company.  All three were mortgaged and after a default on the bonds of the Gulf Company in 1899 a plan was made to bring the road and terminals into one hand.  The Gulf Company's mortgage was to be foreclosed and a new company formed which was to exchange its own securities for the stock and bonds of the Gulf, Dock and Belt Companies, making a new mortgage to raise the necessary funds.  The Gulf Company's mortgage was foreclosed, the appellant Company was formed, issued its new securities, and in March and April, 1900, became the owner of the Gulf road and of most of the stocks and bonds of the old companies including the Belt Company. In September, 1900, a suit was begun to foreclose the Belt mortgage, and on December 31, 1901, it was sold for the amount of its mortgage to the appellant.  The Court of Appeals thought it plain that the foreclosure was part of the original plan; and as it also thought that the mortgaged property was worth enough above the mortgage to pay the unsecured creditors, it held that the stockholders when receiving pay for their stock were receiving it in substance as the proceeds of a transaction that removed all property of the Belt Company from its unsecured creditors' reach. The appellant was the principal holder of the Belt Company stock, as well as the purchaser of its property with notice of the outstanding debts, and therefore was decreed to pay the Trust Company's claim.

The proceedings began with a creditors' bill by the Cambria Steel Company against the Belt Company and the Guardian Trust Company to prevent the latter from selling securities held by it for an alleged debt of the Belt Company, the bill denying the debt.  The Court of

Appeals thought that this suit was really a suit of the appellant. The Cambria Steel Company has disappeared and the proceedings have been carried on by the Belt Company, the instrument of the appellant, and later by the appellant, intervening in the suit, and all charging. that the Trust Company was indebted to the Belt. The Trust Company, on the other hand, asserted its rights and prayed judgment for its debt in its answer to the Belt, although it failed to insert a similar prayer in its answer to appellant. The ground of the appellant's intervention was that the Belt mortgage covered after-acquired property, so that it was entitled to the securities in the Trust Company's hands unless the Trust Company could make good its claim. On the other hand the decree foreclosing the Belt mortgage expressly left open the right of the Trust Company to contend that the appellant was bound to pay the Belt Company's unsecured debts.

The appellant attacks the conclusion of the Circuit Court of Appeals upon several grounds. In the first place it contends that the Trust Company is bound by the plan because it was a party to it, exchanged its own Belt Company stock in pursuance of it, was a depositary under it and used all its influence to induce other stockholders and bondholders to come in. It asserts that the plans contained an express covenant not to hold the new company liable for the debts of the old one. It also asserts that the property was not worth more than the mortgage. We will consider these and some subordinate matters in turn.

The plan presented elaborate estimates of the funds required. One item was "For present stock [of the Kansas City Suburban Belt Railroad Company] one-quarter of a share of new preferred stock and three-quarters of a share of new common stock of the company as reorganized for each share of the present stock of those who may deposit thereunder." The Trust Company exchanged its stock and it is said that by its retention of this benefit

it has precluded itself from claiming its debt. But the plan also stated at the outset as one of the results to be attained, "The payment of the floating debt and the existing Car Trust obligations," and at a later point it allowed for payment of floating debts, $475,000, to come from proceeds of the sale of first mortgage bonds and preferred stock and payment of $10 per share by participating stockholders. It is true that the estimate turned out to be much too small, but the plan did not on its face give notice of an intent to prefer the Belt stockholders to its creditors, and therefore the Trust Company by assenting to it and exchanging stock under it lost no rights. What has happened is that, owing perhaps to unexpected difficulties, the plan has not been carried out. The appellant has no ground for complaining that the Trust Company has not tendered back its stock, which it took before the foreclosure of the Belt Road was begun.

But it is said that the Trust Company covenanted not to assert its claim because the agreement provided that 'no right is conferred, nor any trust, liability or obligation (except . . .) is created by this agreement or the plan, or is assumed hereunder, or by or for any new company in favor of any bondholder or any other creditor or any holder of any claims whatsoever against the said companies, . . . with respect to any property acquired by purchase at any foreclosure sale.' It appears to us that argument cannot make plainer the meaning of these words. They exclude an obligation arising from the instrument but neither purport to nor could exclude rights of creditors founded on the facts to which we have referred. Those rights were untouched and none the less that this particular creditor became a party to the agreement because of its other interests that were concerned. We may remark in this connection that we are equally unable to find in the plan a contract in favor of the Trust Company as an unsecured creditor. The plan sets out a

general scheme that it was hoped would be worked out, but its nature, the words quoted, and the authority given to the committee for carrying out the plan to modify it and to use their discretion all are inconsistent with the notion of a promise that all unsecured debts should be paid.

As the claim of the Trust Company was put by the Court of Appeals upon the equitable right of creditors to be preferred to stockholders against the property of a debtor corporation, it is essential to inquire whether the appellant received any such property, that is whether it got by the foreclosure more than enough to satisfy the mortgage, which was a paramount lien. The Master found, as he expressed it, in the absence of proof to the contrary, that the amount for which the property was sold, $1,000,000, the amount of the mortgage, was its fair market value. Although the evidence was not reported the Circuit Court of Appeals was of opinion that it sufficiently appeared that there was a valuable equity. The argument for the appellant assumes that the different conclusion was reached while leaving the Master's finding to stand. But the decision rather lays that finding on one side upon considerations that may be summed up in a few words. The allowance made for the Belt Company's bonds shows that they were regarded as well secured. The stockholders of the Gulf Company in their exchange paid ten dollars a share for stock of the appellant received by them. Therefore it must be assumed that the stock of the appellant was worth at least that amount. Therefore the $4,750,000 of that stock given for the Belt Company's stock was worth at least $475,000, and probably more. But the value of this stock depended on the value of the Belt Company's property above the mortgage. It appears to us that while perhaps not justifying definite figures, the reasoning warrants the belief that there was an equity for which the appellant must account.

The appellant urges that the foreclosure sale is to be

treated as a distinct transaction—that after it had become the owner of the greater part of the bonds and stock of the Belt Company it was free to do as it pleased. If it had simply kept the stock it would have incurred no liability to creditors of the Belt Company and an independent foreclosure would put it in no worse place. But the ownership of the Belt Road by the new company was contemplated from the first and although no fraud on creditors was suggested or intended in the plan, still the Court of Appeals was justified in regarding the whole proceeding as one from the start to the close and in throwing on the appellant the responsibility of so carrying it out as to avoid inequitable results.

It is said that the Trust Company is barred by laches: that the appellant took possession on January 1, 1902, and that the Trust Company did not assert its claim until 1905 in this cause; that it knew and was intimately connected with every step of the reorganization and was silent at a time when its conduct would influence others, as the successful assertion of its claim would have depressed the market value of the appellant's stock and bonds. But the Trust Company set up its claim in this suit in answer to the Cambria bill on November 5, 1900. The very ground of the bill was to prevent the Trust Company from selling securities to satisfy the claim as it had given notice that it intended to. The company tried to become a party to the Belt foreclosure and did succeed in saving its rights from prejudice. When later the Belt Company and the appellants came into this suit it set up its claim again. Without going into further detail we are of opinion that the Trust Company is not barred.

Some technical objections may be left pretty much upon the decision below. 210 Fed. Rep. 699. It is objected that the liability of the appellant is not open because the exception to the Master's conclusion against it was put upon other grounds than the merits, but we

see no reason to doubt that the Court of Appeals was right in thinking that justice would be done by adopting the course that it did. So it is said that the appellant was induced by the form of the exceptions to forego reopening the Master's finding that the Belt Company was indebted to the Trust Company. But it is not to be believed that the appellant has given up anything that it thought worth insisting upon. 210 Fed. Rep. 700. So as to the absence of a specific prayer for relief in the Trust Company's answer to the appellant's intervention in its own name. In short while it is true that reorganization plans often would fail if the old stockholders could not be induced to come in and to contribute some fresh money, and that the necessity of such arrangements should lead Courts to avoid artificial scruples, still we are not prepared to say that the Court of Appeals was wrong in finding that there had been a transgression of the well settled rule of equity in this case, or that it went further than to see that substantial justice should be done.

There is a motion to dismiss upon which in view of our decision the defendant in error would not desire to insist, and on the other side a petition for certiorari in case its appeal should be dismissed. In the circumstances the distinctions become of little importance. But the Cambria bill asserted a lien under the judgment of a Federal court and the petition of the appellant asserted title under a decree of a Federal court, so that the decree may be affirmed upon the appeal. *Cooke* v. *Avery,* 147 U. S. 375. *Commercial Publishing Co.* v. *Beckwith,* 188 U. S. 567, 569. The case has been so fully discussed below that we think it unnecessary to go into further detail.

*Decree affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE VAN DEVANTER are of opinion that upon the findings of the Master the decree should be reversed, and therefore dissent.