## MOUNTAIN STATES POWER CO. v. JORDAN LUMBER CO. et al.

### (District Court, D. Montana. January 13, 1923.)

### No. 162.

1. **Corporations ⬪⟹580—New corporation, controlled by same parties as old, held to have burden of sustaining fairness of reorganization.**

   Where an insolvent corporation was controlled by holders of its securities, who procured a receivership, and who also controlled the reorganized company formed to purchase the property at foreclosure sale, the burden is on the reorganized company to show that the reorganization was in all respects fair and just, and the price it paid for the property was adequate, and was not misapplied to the prejudice of a creditor of the old company.

2. **Corporations ⬪⟹579(2)—New company must indemnify creditor of old company for breach of trust in reorganization in which it participated.**

   The new corporation, which participated in a reorganization plan whereby the persons who controlled both old and new companies became trustees for the creditors of the old company, is liable to a creditor of the old company for a breach of trust in the premises in which it participated.

3. **Corporations ⬪⟹482(8)—Payment in bonds and stocks of new company is adequate price for property acquired at foreclosure sale of old company, regardless of value of property.**

   Where a reorganized company paid for the property it acquired at the foreclosure sale of the old company all of its bonds and stocks, which fully represented the property purchased, the price paid was adequate, regardless of the value of the property.

4. **Corporations ⬪⟹580—Evidence held to show old corporation's property was sufficient to pay all debts.**

   Evidence *held* to show that the value of property owned by a corporation for which a receiver had been appointed, which property was later sold at foreclosure sale to a new company, was sufficient to pay all of the debts of the old company, in view of the failure of the officers of the company to produce evidence, which was in their possession and called for, as to the value of the properties.

5. **Corporations ⬪⟹ 579(2)—Distribution of purchase price of property to exclusion of creditor of old company held breach of trust.**

   Where the proceeds of the sale on foreclosure of the property of the company were of sufficient value to pay the company's bondholders and its floating debt, and were appropriated, by those who controlled both the old and new companies and owned the bonds, to the payment of the bonds and the floating debt, excluding a claim for a tort, and the balance turned over to the new company, there was a misapplication of the proceeds of the sale by those who were trustees for the creditors, in which the new company participated, so that it is liable for the judgment, which was not paid, and it was then too late for that claim to be included with the other floating debt of the old company.

6. **Corporations ⬪⟹579(4)—Payment to bondholders from receipts of receiver, in addition to agreed price, is misapplication.**

   Where the bondholders of a corporation, which was in the hands of a receiver, agreed to and did receive the bonds and preferred stock in the new company in satisfaction of their old bonds, it was a misapplication of funds to pay such bondholders a portion of the income from the property while it was in the receivers' hands.

7. **Corporations ⬪⟹579(2)—Income during receivership, applied to extensions for benefit of reorganization, is diverted from old creditors.**

   Income from the operation of property by receivers, which is applied to extensions or additions to the properties for the benefit of the reorganized

company which purchased the property at foreclosure sale, is diverted from its proper application to the payment of the debts of the old company, and a creditor of the old company can look to the purchaser for payment of his claim to the extent of such betterments.

In Equity. Suit by the Mountain States Power Company against the Jordan Lumber Company and others to enjoin an execution sale, in which the defendant company prayed for equitable relief, for the satisfaction of its claim from property received by plaintiff in the reorganization of an insolvent company, which was indebted to defendant. Decree rendered for defendant.

B. S. Grosscup, of Tacoma, Wash., for plaintiff.

T. H. MacDonald, J. E. Erickson, and C. H. Foot, all of Kalispell, Mont., and Henry C. Smith, of Helena, Mont., for defendants.

BOURQUIN, District Judge. In this suit to enjoin execution sale, the defendant company prays for equitable relief, for that, in the corporate reorganization hereinafter referred to, the properties of the levy were transferred to plaintiff with notice that they and their proceeds were misapplied to the prejudice of defendant as a creditor of the old company.

From the evidence, in which is little conflict, it appears that in 1909 what may be termed the Byllesby interests (H. M. Byllesby & Co. and its subsidiaries) syndicated certain light and power properties in Montana, Idaho, Washington, and Oregon, and subject to a pre-existing bond issue of $800,000 transferred them to a corporation by the syndicate organized to that end, viz. Northern Idaho & Montana Power Company, in exchange for the latter's bonds, in amount $4,614,500, and capital stock, in amount $6,200,000. Those properties, with indefinite, but large, additions to reorganization in 1916–1917, are these of the levy. The old company, the reorganization, and the new company, this plaintiff, at all times were, and the latter yet is, controlled, operated, and managed by the Byllesbys. They sold, bought, and traded in bonds and stocks of both companies, and though always were other owners of both, at reorganization the Byllesbys owned about 40 per cent. of those of the old company.

In 1916 and for some time the old company had failed to earn fixed charges, was at the end of its resources as a going concern, and was insolvent. The reorganization plan was that a new company would be organized, to take over all the properties of the old company, subject to the oldest bond issue of $800,000, then reduced to $667,000, in exchange for the new company's bonds, in amount $2,333,000, preferred stock, in amount $2,132,000, and common stock, in amount $5,000,000, but changed to 50,000 shares without par value. Of this consideration $1,820,000 bonds, with interest from February 1, 1917, all the preferred stock, and 25,700 shares of the common stock were to be exchanged for the old bonds and interest coupons of the date last aforesaid; $523,000 bonds were to be sold for cash for payment of "claims against the receiver, expenses of reorganization, the expenditures made or liabilities incurred in carrying out of this plan and the annexed agreement, and any balance to be paid over to the new company to be used

by it for additions to its property and working capital"; and 23,400 shares common stock were to be used to pay the floating debt of the old company, but first to be offered at $15 per share to stockholders of the old company, who deposited with and transferred to the committee their old stock. The floating debt was $517,000, for money loaned to the old company by the Byllesbys or on their guaranty. Defendant's claim was not expressly within the plan's contemplation. Only 1,550 of these floating debt shares were sold, and the others are in trust with the Byllesbys. During this trial, and for the first time, and by plaintiff, it is offered to admit defendant to the benefit of this provision for the floating debt, which defendant declines.

The $523,000 of bonds were practically all returned to the new company; the expenses of receiverships, for which they were in part designed by the plan, having been paid from the old company's current funds. This plan, as contemplated, was executed by way of the usual amiable and perfunctory receiverships and foreclosures, wherein it does not appear that any court exercised any particular solicitude for all equitable interests. See the Louisville Co. Case, 174 U. S. 688, 19 Sup. Ct. 827, 43 L. Ed. 1130. Nor does it appear, save by inference, that any court was advised of this plan of reorganization, or was informed by appraisals and valuations in detail of the worth of the properties.

In December, 1916, one of the Byllesbys commenced the conventional unsecured creditor's suit in the federal court for the Eastern district of Washington, and another of the Byllesbys was appointed receiver. Ancillary proceedings were instituted in the federal courts of the other states aforesaid, and the same receiver appointed. In April, 1917, foreclosure proceedings, original and ancillary, were likewise instituted in respect to the old bonds, exclusive of the oldest issue of $667,000. In none of these proceedings was any defense made.

April 16, 1917, there were presented in the clerk's office of this court certain certified copies of papers in the original receivership proceedings. In no respect do they indicate they were intended for the ancillary proceedings herein, but over their cover indorsement of the Washington court the clerk of this court placed the number of the ancillary proceedings and in their files incorporated the copies.

Therein appears a petition to the Washington court for leave to the receiver to expend current funds on extensions of the properties, and which refers to an attached copy of a plan of reorganization of the old company, but which plan copy is not attached to the petition copy so filed in the clerk's office of this court. It is noteworthy that the order granting the petition recites that by reason of the extensions "the property will sell for an increased price." If these copies were brought to this court's attention in the receivership proceedings, that is the extent of its knowledge of the reorganization plan.

Other like certified copies disclose that throughout the receivership proceedings and in settlements with the new company, the court and parties recognized that the net income from the properties prior to foreclosure sale were property of the old company, and not by the plan to vest in the new company; the latter taking net income only after said sale, and all settlements, payments, and orders were made according-

ly, so far as appear. The legal proceedings ran their course and final orders were made in January, 1918.

During the receivership the operating profit, excluding about $70,000 expenses due to receivership alone, was about $168,000. Of this, $84,500 were expended in extensions or additions to the properties, $17,350 were placed in the sinking fund for the oldest bond issue, and $66,000 were paid to old bondholders. At the foreclosure sales, of course, there were no opposition bidders. In the financial world, as in the political, are spheres of influence partitioned between the powerful. Rarely does any poach upon another's preserve. The Byllesbys purchased the properties for about $1,700,000, and which were distributed to old bondholders and approved by the court of original proceedings.

Whether in the main mere bookkeeping, as is probable, is not explained in the instant trial, nor is there explanation of the distribution to old bondholders of the old company's net income, nor is there of the return to the new company of the $523,000 bonds aforesaid. All old bondholders, save in amount $63,000, participated in the reorganization plan, and to the holders of the $63,000 bonds cash was paid on the basis of sales for $1,700,000. Defendant's claim originated in December, 1916, in destruction of its mill by fire, due to the old company's negligence. A claim therefor was rejected by the receiver, and it does not appear that this was brought to the attention of and considered by any court in receivership proceedings.

Defendant brought action against the old company, and it was removed to this court. After receiverships and foreclosures completed, the action was tried, and on February 5, 1919, defendant recovered judgment for $35,077.40. Upon this judgment is the levy of the instant proceedings.

[1] In view of this evidence, it is very clear that the defendant has so far impeached the reorganization that upon plaintiff is the burden to vindicate it by proof that in all respects it is fair and just, that the price it paid for the properties is adequate, and that of these trust properties and proceeds is no misapplication to defendant's prejudice. The reason for this is the Byllesby control throughout and to the knowledge of plaintiff, fiduciary in character in respect to all interested parties—the old and new companies, their bond and stock holders, and their creditors, secured and unsecured, and including defendant—imposing upon the Byllesbys all the obligations of trustees. See Geddes v. Mining Co., 254 U. S. 599, 41 Sup. Ct. 209, 65 L. Ed. 425.

[2] For any their breach of trust in the premises, plaintiff, as participant and accessory with full knowledge, must indemnify defendant to any extent it is damaged. See Smith v. Ayer, 101 U. S. 326–328, 25 L. Ed. 955.

[3] The price that plaintiff paid for the properties was adequate, whatever their value. All its bonds and stocks thus paid fully represented all the properties—are their alter ego. Whatever breach of duty occurred was in distribution of the price.

[4] Adverting to the value of the properties, in addition to the foregoing relating thereto, defendant submitted evidence that in 1916 the

old company, in its report to the Public Service Commission of Montana, listed its assets and their cost, in amount $12,800,000; that the reorganization committee had the properties appraised, the report of which plaintiff had, but failed to produce on defendant's request; that in 1918 the plaintiff had like appraisal, and likewise failed to produce on request, though one of plaintiff's witnesses testified the amount was $6,000,000; that in 1920 plaintiff issued notes, convertible in preferred stock at $95 and common at $50, on representations that in 1919 it earned fixed charges and an excess probably sufficient for full dividends upon the preferred stock; that the reorganization plan had prophesied this early success and about 60 cents for the common stock. Rather in rebuttal than in chief, and more on cross-examination than direct, one witness for plaintiff, and of qualifications ignored or assumed, rather than proven, testified that the actual value of the properties was about $4,500,000, and all in excess in reports, etc., was but book value; that to reorganization the old company had paid interest on its bonds, and they sold at 25 to 50; that new bonds sold for 85 to 88, new preferred stock, with common "thrown in," at 70; and that the new common was not otherwise on the market—was no market for it.

This evidence does not suffice to prove that at reorganization the properties were not of sufficient value to reasonably work out full payment of all the creditors of the old company. On the contrary, taking into consideration all facts and circumstances in proof, and weighed in the light of those plaintiff might have adduced and did not, that with comparative ease it might have fully informed the court and wherein defendant virtually could not, the finding is justified, required, and made that at reorganization the properties of the old company were of sufficient value to pay in full all the old company's creditors, secured and unsecured, and including defendant; that is to say, were of value not less than $6,200,000, and the total of all debts, secured and unsecured, did not exceed said sum. Incidentally, to hold otherwise would involve unpleasant implications that plaintiff's bonds and stocks are afloat not paid in full, that the "blue sky" laws have been evaded, and that the Byllesbys have been misrepresenting facts in their dealings with these companies and for the purposes of rate-making and the market.

[5] Of the value no more accurate determination can or need be made; for, since all the properties and their proceeds were of sufficient value as aforesaid, and were appropriated to the old company's bondholders and floating debt, and to the new company, in exclusion of defendant, there was misapplication of trust funds in which defendant was entitled to share to the extent of its claim, by reason of which it may have equivalent relief herein. Plaintiff's offer to now admit defendant to the plan for the floating debt, even if made with authority which, though probable, does not appear, is too late. See the Boyd Case, 228 U. S. 508, 33 Sup. Ct. 554, 57 L. Ed. 931.

[6] Other misapplication, with like consequence, is found in the distribution to old bondholders of some $66,000 of the net current income during receivership of the old company. They had agreed to, and did,

receive $3,952,000 bonds and preferred stock, and 25,700 shares of common stock of the new company, in satisfaction of their old bonds. They were not entitled to anything more, and this net income, thus given to them gratis, was property of the old company, and that otherwise and in the circumstances would have been available to defendant's claim, even though in tort.

[7] The same may be said of the net income diverted to extensions of or additions to the properties on petition of old bondholders, and to increase the price at foreclosure sale—a sale intended to be, as it was, in form only, and by themselves to themselves. Some $50,000 of this was prior to said sale property of the old company, so recognized by plaintiff, all other parties, and the court in settlement, payments, and orders, so far as appear, and hence was available to defendant's claim, but for that diversion to plaintiff's advantage and without consideration.

In the matter of the $523,000 bonds paid for the properties by plaintiff and returned to it as aforesaid, it can be reasonably argued that out of them defendant's claim should have been paid, in that in its present equitable aspect it is of the "liabilities incurred in carrying out" the plan and agreement, and for which these bonds in part were intended.

To determine this is not necessary, nor whether any said bonds were so returned without consideration, nor whether old stockholders were so far benefited by the plan that the principle of Kansas City Ry. v. Trust Co., 240 U. S. 172, 36 Sup. Ct. 334, 60 L. Ed. 579, has application, nor whether are other items of misapplication. It otherwise appears and suffices that, in other devastavit of trust funds out of which defendant's claim should have been paid, plaintiff had a part to its own profit and to that of others to its knowledge.

Accordingly decree will be entered in favor of the defendant company and against the plaintiff for $35,077.40, with legal interest from February 5, 1919, and costs, and with lien upon the properties involved, but subject to the bond issues of $667,000 and $2,333,000 aforesaid, and like decree in favor of the defendant marshal for costs.