## In re ALAMAC OPERATING CORPORATION.

### No. 200.

Circuit Court of Appeals, Second Circuit.

May 5, 1930.

and that such claim is entitled to priority in payment by virtue of section 64 of the Bankruptcy Act (11 USCA § 104). From a somewhat confused record, we understand the facts to be as follows:

Alamac Hotel Company operated a hotel in New York City. It owned the land and hotel building subject to first, second, and third mortgages. Early in the year 1925 equity receivers were appointed for the property of Alamac Hotel Company by the District Court for the Southern District of New York. Simultaneously with the institution of said receivership proceeding, the second mortgage upon the hotel was foreclosed in a state court, and the purchaser at the foreclosure sale subsequently executed a lease of the property which was assigned to the bankrupt, Alamac Operating Corporation, a New York corporation. The bankrupt was organized in July, 1925, for the purpose of acquiring said lease and operating the hotel. Under a plan of reorganization approved by the District Court in said receivership proceeding, the bankrupt acquired, under a bill of sale signed by the equity receivers, all the personal property belonging to Alamac Hotel Company. The plan of reorganization provided for the giving of stock to assenting creditors and to stockholders of the Alamac Hotel Company, but contained no provision for paying nonassenting creditors. The property covered by the bill of sale consisted of furnishings purchased by said hotel company under a conditional bill of sale, on which a balance still remained due, and other furnishings, fixtures, and chattels, all subject to chattel mortgages. At the time of the bankruptcy, apparently in February, 1928, the bankrupt was in possession of the hotel under the above-mentioned lease. This lease was canceled by dispossess proceedings. The aforesaid conditional bill of sale was foreclosed and the furnishings retaken by the conditional vendor, and the chattel mortgages were likewise foreclosed, so that the trustee in bankruptcy has received no property that had come to the bankrupt from Alamac Hotel Company, nor has he received any proceeds of such property. The property received by the bankrupt under the bill of sale of the equity receivers was forthwith subjected by it to a subordinate chattel mortgage, securing an issue of the bankrupt's notes, and some $30,000 of such notes were sold to raise working capital.

The tax imposed by section 181 of the New York Tax Law is a license fee assessable against a foreign corporation for the privi-

Hamilton Ward, Atty. Gen. (Robert P. Beyer, and William M. Brouillard, Dep. Asst. Atty. Gen., of counsel), for appellant.

Percival E. Jackson, of New York City, for appellee trustee in bankruptcy.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The appellant asserts that the bankrupt is liable for a license tax of $5,945.89 assessed under section 181 of the New York Tax Law (Consol. Laws N. Y. c. 60) against Alamac Hotel Company, a New Jersey corporation,

lege of doing business within the state. It is not an annual franchise tax. It does not appear in what year the tax was assessed against Alamac Hotel Company, but obviously it was prior to the year 1925, and hence was a debt of that corporation at the time when the bankrupt took over the hotel company's personal property. The record discloses that, in a proceeding in a court of the state, a judgment has been entered declaring the tax to be a valid lien upon the real estate in the hands of the purchaser under foreclosure of the second mortgage.

■ Whether the license tax was a lien, by reason of section 197 of the Tax Law, upon the personal property of the old corporation taken over by the new corporation, need not be determined, for none of that property, or its proceeds, according to the referee's findings, has come into the bankruptcy estate. Allowance of the claim must turn upon whether the new corporation was under any personal obligation to pay the tax of the old. No express assumption of liabilities was made in the reorganization agreement, nor in the consent decree pursuant to which the receivers turned over the property; but, without express assumption, an obligation to pay debts of the transferor will, under proper circumstances, be imposed by operation of law upon the transferee of the assets of an insolvent corporation. The critical question is whether such an obligation exists in the case at bar.

■ Without the payment of any consideration therefor, the new corporation took the chattels of the old, leaving it completely denuded of assets; and the new corporation was composed of stockholders and assenting creditors of the old. No one would doubt that such a conveyance was a fraud upon any creditors not parties to it, were it not done under the label of a receivership reorganization. The trustee in bankruptcy concedes as much. But this label, obtained by a consent decree, can add nothing to the validity of the transaction. Northern Pac. Ry. v. Boyd, 228 U. S. 482, 502, 33 S. Ct. 554, 57 L. Ed. 931; Kansas City Southern Ry. v. Guardian Trust Co., 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579. Indeed, the consent decree did not profess to exclude nonassenting creditors, nor is there any evidence that the state of New York was so cited as to bind it, if the order had attempted to conclude it. Under such circumstances, the new corporation became liable to nonassenting creditors of the old, at least to the extent of the value of the assets received from the latter. Hurd v. New York

& C. Steam Laundry Co., 167 N. Y. 89, 60 N. E. 327; Du Vivier & Co. v. Gallice, 149 F. 118 (C. C. A. 2); Yone Suzuki v. Central Argentine Ry., 27 F.(2d) 795, 807 (C. C. A. 2); Okmulgee Window Glass Co. v. Frink, 260 F. 159 (C. C. A. 8); Sanborn-Cutting Co. v. Paine, 244 F. 672, 680 (C. C. A. 9); Northern Pac. Ry. v. Boyd, supra; Skirvin Operating Co. v. S. W. Electric Co., 71 Okl. 25, 174 P. 1069, 15 A. L. R. 1104; American Ry. Express Co. v. Kentucky, 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543; 14 C. J. 890. We need not stop to discuss the precise theory upon which this result may best be supported.

■ It is said by the trustee in bankruptcy that the assets taken over from the old corporation had no value in excess of the liens of the conditional vendor and the existing chattel mortgagees, and that foreclosure of these liens subsequently deprived the bankrupt of all such assets. Nevertheless, it appears that it obtained some $30,000 by putting a subordinate mortgage upon these assets. This would seem to be at least prima facie proof that the equity received had a value sufficient to satisfy the state's claim, and to require the trustee in bankruptcy to come forward with evidence to show its lack of value if such was the case. Proof that at some time later (it does not appear when) the prior liens were foreclosed, is not sufficient to establish that the property had no value when taken over. But, aside from this failure to overcome the claimant's prima facie proof of value, we think the placing of the new mortgage upon the property conclusively established the bankrupt's personal liability to the extent of the money obtained thereby. In Boyd v. Northern Pac. Ry. (C. C.) 170 F. 779 (affirmed in [C. C. A.] 177 F. 804, affirmed 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931), it is said, at page 794:

" * * * It must be held that there is no personal liability except where property has been disposed of, misapplied, or converted. The general trust doctrine would not permit of a more extended application, but the personal liability of one who fails to observe the duty imposed, when the assets of a corporation come into his hands, is abundantly sustained by authority."

The mortgage was a disposition and conversion of the property by a constructive trustee, and imposed personal liability to account for the proceeds. Hence the state's claim should have been allowed.

■ It remains to determine whether the claim is entitled to priority in payment under sec-

tion 64 of the Bankruptcy Act. Paragraph (a) of that section directs payment by the trustee of "all taxes legally due and owing by the bankrupt" (11 USCA § 104(a), and the appellant assumes that the obligation of the bankrupt is an obligation to pay a tax. It must be conceded that there is some authority for this view. In re Grand Leader, 5 F.(2d) 509, 511 (two cases, D. C. N. D. Tex.); In re W. J. Marshall Co., 3 F.(2d) 192 (D. C. S. D. Ga.), affirmed sub. nom. Heyward v. United States, 2 F.(2d) 467 (C. C. A. 5); In re Glover-McConnell Co., 9 F. (2d) 683 (D. C. N. D. Ga.); Blackinton v. United States, 6 F.(2d) 147 (C. C. A. 8, priority assumed). But in none of these cases was the point considered at large, nor were arguments advanced which are persuasive to our minds. If the trustee in bankruptcy has received assets which are subject to a lien for taxes assessed against a predecessor, or proceeds of such assets, no doubt the state may claim the priority which the Bankruptcy Act accords to taxes. But here there is no such lien, and the state's claim is based upon an obligation imposed by law upon a constructively fraudulent grantee. Such an obligation is not a tax due and owing by the bankrupt. It is more analogous to the obligation of one who has agreed to pay another's tax. See Hardeman v. Hendrix, 29 F.(2d) 738 (C. C. A. 5), In re Broom, 123 F. 639 (D. C. W. D. N. Y.), and In re William A. Harris Steam Engine Co., 225 F. 609 (D. C. R. I.), holding that taxes assessed against the lessor's real estate which the lessee has agreed to pay, are not entitled to priority in payment from the lessee's estate in bankruptcy; In re Waller, 142 F. 883 (D. C. Md.), holding that the county's claim against a bankrupt tax collector, who has failed to pay over taxes collected, is not entitled to priority. See, also, Commonwealth of Penn. v. York Silk Mfg. Co., 192 F. 81 (C. C. A. 3); United States v. Kaufman, 267 U. S. 408, 45 S. Ct. 322, 69 L. Ed. 685. We hold, therefore, that the state's claim is not within section 64a (11 USCA § 104(a).

■ But it is within paragraph b(7) of that section, as a debt "owing to any person who by the laws of the States * * * is entitled to priority." By the law of New York, the state, as sovereign, has succeeded to the crown's prerogative right of priority as to all debts due to the state. Marshall v. New York, 254 U. S. 380, 383, 41 S. Ct. 143, 65 L. Ed. 315; Matter of Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260; Matter of Niederstein, 154 App. Div. 238, 138 N. Y. S. 952; Remington, Bankruptcy (3d Ed.) § 2840.

■ The record discloses that the state has a tax lien upon real estate formerly owned by the old corporation. What effect this can have in the present suit is not apparent. The state is entitled to have its claim allowed, with the priority accorded by section 64b(7), 11 USCA § 104(b)(7). Whether upon payment the trustee in bankruptcy will have any rights against the owner of the real estate which will thereby be relieved of the tax lien is not before us. Nor have we considered whether the doctrine of marshaling assets might under any circumstances be invoked against the state. The point has not been argued, and this record would be insufficient to enable us to pass upon it if it were.

The appellant's brief asks for the allowance of its claim for $5,945.89, with interest at 6 per cent. per annum from July 7, 1925. Apparently the face of the claim already includes interest computed to a date later than July 7, 1925, for it appears from the amount adjudged as a tax lien in the state suit that the claim was only $5,405.36 on December 2, 1927. On this record we cannot determine the precise amount of the claim, nor has any argument been advanced to show that the state should receive interest accruing subsequent to the date of bankruptcy. See People v. Metropolitan Surety Co., 158 App. Div. 647, 144 N. Y. S. 201. We leave the amount of the claim and the question of interest to be determined by the court below. Accordingly the order is reversed and the cause remanded for further proceedings consonant with this opinion.