## LINDH et ux v. BOOTH FISHERIES CORPORATION.*
### No. 7951.

Circuit Court of Appeals, Ninth Circuit.
Dec. 16, 1935.

Leo W. Stewart, of Seattle, Wash., for appellants.

William H. Hayden, Fred T. Merritt, Lane Summers, and G. H. Bucey, all of Seattle, Wash., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellants urge that the trial court erred in sustaining appellee's motion to dismiss their second amended complaint with prejudice.

By that amended complaint appellants sought to recover from appellee corporation the amount to them due upon a judgment theretofore obtained against a corporation, all of whose assets were conveyed to appellee under a reorganization plan.

It appears that plaintiffs are residents of Washington, and that defendant is a Delaware corporation, authorized to engage in business in Washington. Hans Lindh was injured on August 16, 1930, by reason of the negligence of Booth Fisheries Company, also a Delaware corporation engaged in business in Washington, and on April 9, 1932, sued that corporation in the state court to recover for the injuries sustained.

On petition of that company, the action was removed to the District Court about a month thereafter.

On October 15, 1932, the company, defendant in said action, filed its petition in bankruptcy and was adjudicated a bankrupt, and a receiver was appointed to take over the assets and continue the business until a trustee was elected. The trustee was elected and qualified, and it is alleged that "the stockholders, bond-holders, and creditors, secured and unsecured, acting in concert and through various committees representing the different classes theretofore appointed by such classes for the purpose, devised a scheme or plan for the re-

*Rehearing denied Jan. 27, 1936.

organization of said bankrupt and its business, whereby said classes agreed between and among themselves to form ·a new corporation under the laws of the State of Delaware to be known as Booth Fisheries Corporation to which corporation should be transferred all the assets of said bankrupt Booth Fisheries Company and for which assets compensation should be given to the stockholders of said bankrupt in the form of stock in new Booth Fisheries Corporation in amount determined by and satisfactory to all parties to said scheme or plan or reorganization."

It is also alleged that appellee·was organized, and stock issued as set forth above; that the value of the assets at the time of the transfer amounted to approximately sixteen millions of dollars. The details of the exchange of stock are alleged, as also are the facts, that because plaintiffs' claim was unliquidated, they had no standing in the bankruptcy proceedings, were unable to and did not take part therein. It is further alleged that in the reorganization plan there was no provision made for the payment of plaintiffs' claim, and the judgment debtor had left remaining no assets from which plaintiffs' claim could be satisfied.

Plaintiffs also allege that they recovered judgment in said action for personal injuries for $1,750 and costs amounting to $48.75 on May 1, 1933, which was some time after the transfer of the assets from the judgment debtor to appellee. It is also alleged that execution was issued and returned unsatisfied.

Plaintiffs instituted this cause, originally to impress a lien on the assets transferred, but by the second amended complaint, it is alleged that the identity of the assets was not known to plaintiffs, that they were unable to follow the same, and that "because thereof, they have elected to ask for a money judgment herein."

The last two paragraphs of the second amended complaint are· as follows:

"That by the acts of the defendant as hereinbefore alleged, plaintiffs have been damaged by said defendant in the amount of their said judgment against the Booth Fisheries Company, to-wit: in the sum of $1,798.75 and interest thereon at the legal rate from the 1st day of May, 1933.

"Wherefore plaintiffs pray that they have judgment against the defendant, Booth Fisheries Corporation in the sum of $1,798.75 and interest thereon at the legal rate from the first day of May, 1933, and for their· costs herein expended."

The second amended complaint was dismissed by the lower court for the reasons that the said complaint failed to state facts sufficient to constitute a cause of action or suit, and that it was a fatal departure from the cause set forth in the original complaint.

■ Although the "matter in controversy" in the case at bar does not exceed $3,-000, even including interest and costs, as required by 28 U.S.C.A. § 41 (1), the lower court took jurisdiction, apparently, and we believe correctly, considering that this cause was ancillary to the one in which judgment was rendered.

Before considering specific claims of the insufficiency of the complaint, it is necessary to discuss the general principles upon which the theory of the complaint is based.

In Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co., 174 U.S. 674, 683, 19 S.Ct. 827,·830, 43 L.Ed. 1130, it is said: "Assuming that foreclosure proceedings may be carried on to some extent at least in the interests and for the benefit of both mortgagee and mortgagor (that is, bondholder and stockholder), we observe that no such proceedings can be rightfully carried to consummation which recognize and preserve any interest in the stockholders without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation. In other words, if the bondholder wishes. to foreclose and exclude inferior lienholders or general unsecured creditors and stockholders, he may do so; but a foreclosure which attempts to preserve any interest or right of mortgagor in the property after the sale must necessarily secure and preserve the prior rights of general creditors thereof. This is based upon the familiar rule that the stockholder's interest in the property is subordinate ,to the rights of creditors. First, of secured, and then of unsecured, creditors. And any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation."

In Northern P. R. Co. v. Boyd, 228 U.S. 482, 502, 33 S.Ct. 554, 559, 57 L.Ed. 931, it is said:

"Corporations, insolvent or financially embarrassed, often find it necessary to scale their debts and readjust stock issues with an agreement to conduct the same business with the same property under a reorganization. This may be done in pursuance of a private contract between bondholders and stockholders. And though the corporate property is thereby transferred to a new company, having the same shareholders, the transaction would be binding between the parties. But, of course, such a transfer by stockholders from themselves to themselves cannot defeat the claim of a nonassenting creditor. As against him the sale is void in equity, regardless of the motive with which it was made. For if such contract reorganization was consummated in good faith and in ignorance of the existence of the creditor, yet when he appeared and established his debt, the subordinate interest of the old stockholders would still be subject to his claim in the hands of the reorganized company. * * * There is no difference in principle if the contract reorganization, instead of being effectuated by private sale, is consummated by a master's deed under a consent decree. * * *

"For, if purposely or unintentionally a single creditor was not paid, or provided for in the reorganization, he could assert his superior rights against the subordinate interests of the old stockholders in the property transferred to the new company. They were in the position of insolvent debtors who could not reserve an interest as against creditors. Their original contribution to the capital stock was subject to the payment of debts. The property was a trust fund charged primarily with the payment of corporate liabilities. Any device, whether by private contract or judicial sale under consent decree, whereby stockholders were preferred before the creditor, was invalid."

See, also, Oehring v. Fox Typewriter Co. (C.C.A. 6) 272 F. 833; Phipps v. Chicago, R. I. & P. Ry. Co. (C.C.A. 8) 284 F. 945, 28 A.L.R. 1184; Kansas City Terminal Ry. Co. v. Central Union Trust Co. (C.C.A. 8) 28 F.(2d) 177; Howard v. Maxwell Motor Co. (D.C.N.Y.) 269 F. 292; First Trust Co. v. Crooked Creek R. & Coal Co. (D.C.Iowa) 243 F. 450; Guaranty Trust Co. v. Missouri Pac. Ry. Co. (D.C.Mo.) 238 F. 812.

█ Appellee contends that the above rule has no application to the instant case for several reasons. One reason claimed is that the rule is stated in cases where there was a suit to foreclose a mortgage and that the reorganization in said cases was completed by a "consent decree." The principle is controlling, however, regardless of the nature of the device used. The controlling feature of such rule is that stockholders have obtained an interest in the reorganized concern, without first using such interest in the extinguishment of creditors' claims. It cannot be said that the prohibition of the principle is effective when one device is used, but is ineffective or nullified when a different device is used. Other reasons urged by appellee in connection with this contention are disposed of in the consideration of other points raised.

Appellee contends that the complaint should have contained allegations showing that there was fraud, collusion, misrepresentation, or imposition inducing the bankruptcy court to permit transfer of the assets. Such allegations as well as allegations of irregularity or illegality in the proceedings are not essential as shown by the above quotations.

Allegations that appellants had acquired a lien on the assets transferred are likewise unimportant because such lien arises as a conclusion of law from the existence of certain facts.

Appellee urges that there is no allegation to the effect that it assumed, as a condition of the transfer or otherwise, any obligation to pay appellants' claim. Recovery on such a theory is distinct in itself, and therefore such allegation is unnecessary under the theory pursued here.

█ It is alleged in the second amended complaint that the "stockholders, bondholders and creditors, secured and unsecured" of the bankrupt devised the scheme of reorganization and that the value of the assets "was upward of" $16,000,000. Having alleged that there were bondholders, which ordinarily implies that there are holders of obligations secured by a lien on property, and that there were secured creditors, which would ordinarily mean that such creditor by reason of his security held a lien on property, we think it was incumbent on appellants to allege, at least, how much the value of the property exceeded the amount of the liens on such property. Regardless of the value of the property, if the amount of the liens exceed the value, the stockholders have

736

received no interest or value, and therefore the unsecured creditors have been deprived of nothing.

In Kansas City S. Ry. Co. v. Guardian Trust Co., 240 U.S. 166, 176, 36 S.Ct. 334, 336, 60 L.Ed. 579, it is said: "As the claim of the Trust Company was put by the court of appeals upon the equitable right of creditors to be preferred to stockholders against the property of a debtor corporation, it is essential to inquire whether the appellant received any such property, —that is, whether it got by the foreclosure more than enough to satisfy the mortgage, which was a paramount lien."

In Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U.S. 445, 455, 46 S.Ct. 549, 551, 70 L.Ed. 1028, it is said: "Unsecured creditors of insolvent corporations are entitled to the benefit of the values which remain after lienholders are satisfied, whether this is present or prospective, for dividends or only for purposes of control."

In Western Union Telegraph Co. v. United States & M. T. Co. (C.C.A. 8) 221 F. 545, 549, it is said: "Any plan or scheme threatened or executed whereby the holders of the bonds secured by the mortgage and the stockholders secure, or intend or undertake to secure, to the stockholders, by contract, foreclosure sale, or other device, an equal or a greater benefit from the property than is thereby secured to, or offered to and rejected by the general creditors, is such a breach or threatened breach of trust as entitles any complaining creditor to relief in a court of equity. A purchase through a foreclosure sale, or otherwise, of the property of an insolvent corporation by a new corporation, pursuant to a plan or scheme of the bondholders and stockholders of the insolvent company, whereby the stockholders thereof derive, by receipt of stock or bonds of the new company, or otherwise, benefits equal to or greater than those received by, or openly offered to and rejected by, its general creditors, is fraudulent in law as to the latter, and renders the new corporation and the property it purchased at such sale liable for the claims of such creditors against the old company, at least to the extent of the value of the interest secured by the stockholders of the old company in excess of the value of the interest secured by, or openly offered to and rejected by, the unsecured creditors."

In Okmulgee Window Glass Co. v. Frink (C.C.A. 8) 260 F. 159, 161, it is said: "We have carefully examined the entire evidence, and are convinced that the Coffeyville Company was merged in and absorbed by appellant, which is really nothing more than a continuation of the Coffeyville Company. The arrangement was as follows: The organization by the same individuals of a new company (appellant), with the same amount of capital stock, to be paid for by the assets of the old company (Coffeyville Company), for the sole purpose of continuing the same character of business with the assets of the old company; a transfer to the appellant of the assets of the old company; assumption of the indebtedness of that company by appellant; exchange of stock, share for share. The legal result of such transactions is to impose upon appellant liability, up to the value of such assets, to the creditors of the Coffeyville Company."

In Oehring v. Fox Typewriter Co. (C.C.A. 6) 272 F. 833, 835, it is said: "The plaintiff has no right to relief as upon a reorganization, under the doctrine of Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, and Grenell v. Detroit Gas Co., 112 Mich. 70, 70 N.W. 413. In that line of cases there is a reorganization in which the old stockholders obtain an interest in the new company by virtue of and in consideration of their old stock, and therefore receive from that stock a benefit to which they are not rightfully entitled until after the payment of all debts due by the old company, and it is only this benefit, so received in consideration for the old stock, which the rule of the Boyd Case subjects to the old debts. In the present case there was no such benefit. Every new stockholder paid cash in full for his new stock and received nothing in exchange for his old." See, also, In re Alamac Operating Corporation (C.C.A. 2) 42 F.(2d) 120, 122.

From these authorities the conclusion is inescapable that unless the stockholders received an interest of value, the creditors have not been deprived of any rights. There is no direct allegation in the second amended complaint that the value of the assets exceeded the amount of the liens on the assets. In this connection, in Lane v. Equitable Trust Co. of New York (C.C.A. 8) 262 F. 918, 926, it is said:

"It cannot be said, because the stockholder in the old corporation thus acquired stock in the new, that a conclusive pre-

sumption, or any presumption at all, arises that the property was worth more than the price it sold for at foreclosure sale and more than the mortgage debt. In the opinion in Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U.S. [166], 178, 36 S.Ct. [334], 337, 60 L.Ed. 579, reference' is made to the fact 'that reorganization plans often would fail if the old stockholders could not be induced to come in and contribute some fresh money,' and the court further says, in that opinion, 'that the necessity of such arrangements should lead courts to avoid artificial scruples.' * * *

"There is no testimony in the record to show that the property, which passed under the foreclosure decree was worth more than the price it sold for. Appellant relies upon the plan of reorganization alone to sustain his contention. In our opinion that is not sufficient."

There being no direct allegation that the stockholders have received an interest of any value, we next inquire whether or not such fact may be obtained by inference from other allegations contained in the pleading. The sole allegation touching on the question is the averment that a new corporation was to be formed.

"* * * to which corporation should be transferred all the assets of said bankrupt Booth Fisheries Company and for which assets *compensation* should be given to the stockholders of said bankrupt in the form of stock in the new Booth Fisheries Corporation in amount determined by and satisfactory to all parties to said scheme or plan or reorganization." (Italics ours.)

It is then alleged that appellee was incorporated and the assets transferred from the bankrupt to it, and the stock issued.

From these facts it appears that the "compensation" given the old stockholders was stock in the new corporation, but it is not alleged that the stock had any value whatever. We will not assume from such vague statements that the stock has value, and therefore it cannot be inferred from the allegations that the stockholders have deprived appellants of any rights. In Howard v. Maxwell Motor Co. (D.C.N. Y.) 269 F. 292, 305, it is said: "Plaintiffs, therefore, retained the right to subject the interest of the old stockholders in the property to the payment of their claim. If their interest is valueless, he gets nothing. If it be valuable, he mere-

ly subjects that which the law had originally and continuously made liable for the payment of corporate liabilities."

We have heretofore assumed that the device or method used in the reorganization by which rights of creditors are attempted to be subverted, is not restricted merely to private contractual reorganizations or by foreclosure decrees, but might also conceivably include a device arising out of proceedings in bankruptcy. However, not every reorganization arising out of bankruptcy proceedings can be objected to by the creditors, even though the actual result may be such as might ordinarily fall within the rule in the cases from which we have above quoted. For instance, it is not inconceivable that by virtue of a composition, a reorganization might be effected. See 11 U.S.C.A. § 30. And if a composition is obtained in compliance with the terms of the statute, creditors may not then complain.

A scrutiny of the pleading reveals that the judgment debtor was adjudicated a bankrupt, and that a trustee was appointed, that he qualified and continued operating the business "when the stockholders, bond-holders and creditors, secured and unsecured * * * devised a scheme or plan for the reorganization of said bankrupt. * * *" After alleging the nature of the plan, it is then said: "That thereafter, in accordance with said agreement * * * all the assets * * * were turned over and delivered to said appellee." It is not averred who made the transfer. In so far as the allegations are concerned, title to the assets was shown in the trustee [11 U.S.C.A. § 110 (a)], and then it is said that the assets were transferred to appellee. It does not appear whether there was an outright sale or whether there was a composition. Such facts cannot be left to conjecture, for the trustee would be under the duty to distribute the proceeds received from the sale or composition, and whether or not appellants were deprived of any right to share in the proceeds, would be a matter to be considered in the bankruptcy proceedings. There is no allegation that the bankruptcy proceedings were dismissed, so that in so far as the allegations are concerned, it is left to speculation as to whether the assets were transferred by the trustee at a judicial sale, by the bankrupt under a composition, or by the bankrupt after the bankruptcy proceedings had been

dismissed. The second amended complaint, therefore, is insufficient in these particulars.

Appellee urges that the second amended complaint is a departure from the cause stated in the original complaint because in the original complaint a composition was alleged, and the relief asked was that a lien be declared and the assets sold to satisfy plaintiff's claim, whereas in the second amended complaint the allegations as to the composition were omitted, and the relief asked was a money judgment. In view of our conclusions as above stated, it is unnecessary to consider this question.

Affirmed.