## In re GRAND LEADER.

(District Court, N. D. Texas, at Dallas. April 25, 1925.)

No. 1901.

Bankruptcy ⊚══346 — Tax claim of United States against corporation held entitled to priority in distribution of assets of bankrupt successor.

Where, on dissolution of corporation, its assets and liabilities were assumed by partnership composed of same members, which in turn was succeeded by another corporation tax claim of United States against first corporation was entitled to priority, under Bankruptcy Act, § 64a (Comp. St. § 9648), in proceedings against latter corporation, bankrupt, notwithstanding that successive transfers were not in writing, as required by statute of frauds, there having been part performance of the agreements in each instance.

In Bankruptcy. In the matter of the Grand Leader, bankrupt. On hearing of referee's report, allowing tax claim of the United States as an unsecured claim. Order reviewed, with directions.

See, also, 5 F.(2d) 511.

Henry Zweifel, U. S. Dist. Atty., and Norman A. Dodge, Sp. Asst. U. S. Atty., both of Fort Worth, Tex., for the United States.

Prentice Wilson and Church, Read & Bane, all of Dallas, Tex., for trustee.

MEEK, District Judge. In this tax claim the assessment made by the government is for the sum of $1,108.62, which was made in December, 1923, for additional taxes due for the year 1919 by a corporation of the same name as the bankrupt. The corporation against which this assessment was made was incorporated in the year 1917, and it was later dissolved on February 13, 1920. After this date the same business was carried on under the same name by the stockholders of the corporation as a partnership. However, two additional names were interested in the partnership; these having what is termed by the witnesses "a working interest." These parties so carried on this business until May 15, 1923, at which date a new corporation was formed under the same name, the Grand Leader, and this corporation carried on the identical business that had theretofore been carried on by the partnership and by the earlier corporation.

In the bankrupt corporation the same persons owned and controlled the business, except that the two persons having a working interest in the partnership also held shares of stock, for which they gave their promis-

sory notes, which were to be paid for by the earnings of the corporation. This certificate has been before me once before. The referee, after hearing, and after giving the United States opportunity to be heard, which seemingly was not taken advantage of promptly and fully by the government, the referee entered an order dissallowing the claim of the government for said income tax against the bankruptcy corporation.

The United States appeared and petitioned that the certificate be returned to the referee for the further development of the facts surrounding this tax claim, and to have it allowed against the bankruptcy corporation. The trustee of the bankruptcy estate opposed the granting of this petition, on the ground that the government failed to take advantage of the opportunity already accorded it to do this; but, after considering the matter, and in view of the showing made and questions involved, the record was sent back to the referee.

After the taking of additional testimony and hearing, the referee returned the certificate, with such additional evidence and his conclusions of fact and law upon the record, as it now stands. The referee now finds that the government is entitled to have this tax claim allowed as an unsecured claim against the bankrupt corporation.

The trustee of the estate and his attorneys were present and took part in such further hearing before the referee, and have been advised of his additional findings as to the allowance of said tax claim of the government as an unsecured claim. From the findings of the referee in this matter I quote as follows:

"The testimony is rather extensive and complicated. The facts, as I see it, should have been gotten up by an accountant from the books and submitted as an agreed statement. It is very difficult to determine, from the 21 pages of testimony taken and submitted herewith, anything pertinent to the case, except what I have stated, which I will recapitulate as follows:

"A corporation under the name of Grand Leader, followed by a partnership under same name, partnership followed by corporation under same name, which became bankrupt; each successive concern assumed the obligations of its predecessor."

I quote from the evidence, which the referee says is extensive and complicated:

"Q. Were there any fixtures belonging to the old corporation turned over to the partnership? A. Yes.

"Q. What was the value? A. Cannot say.

"Q. Were there any fixtures turned over from the partnership to the new corporation? A. Yes.

"Q. Can you not give us an idea as to what the fixtures were worth? A. About $2,500. '

"Q. If I get you right, about $2,500 worth of fixtures came from the old corporation into the partnership, and from the partnership into the new corporation that is bankrupt? A. Yes, sir.

"Q. (by referee): Do you think they would bring that much cash, if the trustee in bankruptcy had to sell them at cash sale? A. To the best of my knowledge that is what they would sell for at that time."

Another witness, who was the main owner of this business from the first, testified that these fixtures were at different times, during the first corporation, the partnership, and the last corporation, mortgaged; but the evidence of the witness is of a character that it leaves the court in uncertainty as to the condition of the fixtures of this bankrupt at the beginning of the bankruptcy proceedings. However, we are not shown affirmatively that any fixtures coming in to the trustee's hands were covered by a mortgage.

On the record now before me, the United States claims that, under the evidence taken and the finding of fact made by the referee, it is entitled to priority of payment of the assessed tax from the assets of the bankruptcy corporation. Such priority is claimed by it under section 64a of the Bankruptcy Act (Comp. St. § 9648). There is nothing before the court indicating the trustee of the estate objects to the referee's findings that the government be allowed its claim for this tax as an unsecured claim against the bankruptcy estate. This being the case, the only question now for determination is whether the government is entitled to the claim of priority for the amount of this assessment. Upon this question the United States has submitted a brief.

The Grand Leader became bankrupt while owing the tax claimed here by the government, and under the provisions of section 64a of the Bankruptcy Law the government is given the right of priority for this income tax. The claim being shown to be a tax claim, there is only the question of its being legally due and owing by the bankrupt. This tax claim of the government, which is admitted to be a personal liability of the bankrupt, is entitled to priority of payment by virtue of section 64a of the Bankruptcy Act.

According to my views, there is no necessity for the existence of a lien to the gov-

ernment to vitalize priority here claimed. The record shows that the different agreements by which the partnership followed the corporation and the second corporation followed the partnership, each in turn assuming the liabilities of the preceding business concern, were not in writing. However, the point made by the trustee of the estate under the statute of frauds is answered by the fact that there was such part performance of the agreements entered into in each instance as to take it out of the provisions of the statute of frauds. The succeeding concerns, the partnership following first corporation, actually received the business assets of the preceding concern and continued the business of its predecessor.

The continuance of this business is shown by the evidence given before the referee, and it cannot be questioned; this is supported in all that took place, and especially by the fact that the original permanent store fixtures secured by the original corporation were taken by the following partnership, together with the stock of goods, which were renewed and replaced as the goods and stock were sold out at retail. The second corporation, in turn, the bankrupt here, received from the partnership the same fixtures and the stock of merchandise that was carried by the partnership, and the same business was continued under the same name.

In so far as the record before me goes, there is no creditor of the bankrupt claiming to be protected by any specific lien upon any of the assets of the bankrupt now in possession of the trustee that entitled said creditor to the payment in full, not even any mortgagee of the store fixtures that came from the first corporation. The right of the government to priority of payment does not arise from any lien right, but comes from the provisions of the Bankruptcy Law taking care of the tax claims of the United States. This right arose when the Grand Leader Company was adjudicated a bankrupt. If this tax claim is a correct tax claim, as I have indicated above, there is no cause shown why it should not have priority of payment over the general creditors of the estate.

In so far as the ruling of the referee does not provide for the priority of payment of the tax claim of the government, which he finds to be due to the government from the bankrupt, I think his ruling is erroneous, and should be reviewed and sent back to him, with directions to arrange for priority of payment of the government's tax claim.